[Cite as *Szymczak v. Tanner*, 2012-Ohio-540.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| ANNE K. SZYMCZAK | C.A. No. 10CA0101-M |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANDREW N. TANNER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No. 01 DR 0651 |

DECISION AND JOURNAL ENTRY

Dated: February 13, 2012

CARR, Presiding Judge.

{¶1} Appellant, Anne Szymczak, appeals from a judgment of the Medina County Court of Common Pleas, Domestic Relations Division, that denied her motion to remove the restrictions on her parenting time with her minor child. Because the evidence before the trial court demonstrated that Ms. Szymczak had remedied her behavioral problems through counseling and no longer posed a threat to her child's emotional well-being, the trial court erred by failing to reinstate the standard order of parenting time. Consequently, this Court reverses and remands.

I.

{¶2} Ms. Szymczak and appellee, Andrew Tanner, divorced in 2002, when their minor child, D.T., was one year old. Although the parents initially agreed to an order of shared parenting of the child, it soon became apparent to the trial court that their animosity toward each other prevented them from following the shared parenting order. The parties later agreed that

Mr. Tanner would be designated the residential parent, with Ms. Szymczak having parenting time with D.T. From February 2005, until January 2007, Ms. Szymczak visited with D.T. under a "standard" parenting time order, as she was granted time with him for the entire weekend every other week and/or for overnight visits during the week, with the parents alternating holidays in odd and even years and D.T. spending the parent's birthday and Mother's or Father's Day with the respective parent.

{¶3} On January 5, 2007, however, following an evidentiary hearing that included a forensic custody and visitation evaluation of both parents and the child, the trial court found that Ms. Szymczak was exhibiting extreme animosity toward Mr. Tanner in the presence of D.T. and that her inappropriate behavior posed a threat to his emotional well-being. Consequently, it restricted her parenting time with D.T. to three-hour, supervised visits every other weekend.

{¶4} During June 2008, the parties agreed to continue restricting Ms. Szymczak's parenting time because she was still exhibiting improper behavior around D.T. Because her behavioral problems stemmed from her feelings of anger and bitterness toward her ex-husband, the parties agreed to engage in co-parenting counseling. The June 2008 order further provided that Ms. Szymczak would have expanded, unsupervised visits after she completed three co-parenting sessions, which she later did.

{¶5} The parties also agreed that they would continue in co-parenting counseling at the discretion of the therapist and that the trial court would review the matter again in six months to determine whether Ms. Szymczak's parenting time would be returned to the standard order. By the terms of the order, the trial court's review would "be a determination of [the parties'] good faith compliance with all of the provisions of this order together with receipt of any appropriate reports of the therapist for [Ms.] Szymczak, the therapist of [the child], [the parties'] co-

parenting counselor, and the Guardian Ad Litem." The court would then determine whether it was in D.T.'s best interest for Ms. Szymczak's parenting time to be returned to a standard order.

{¶6} In September 2009, Ms. Szymczak moved to enforce the June 2008 order and to modify her parenting time. During a two-day hearing, the trial court heard testimony from Ms. Szymczak, her therapist, Mr. Tanner, and the parties' co-parenting therapist. After the hearing, the trial court concluded that Ms. Szymczak had "failed to demonstrate that she [had] made significant strides in her own therapy or co-parenting therapy" because she had not overcome her bitterness and anger toward Mr. Tanner. Based on its implicit finding that it had not received "appropriate reports" from the therapists to justify expanding Ms. Szymczak's parenting time, the trial court denied her motion. It also explained that Ms. Szymczak failed to present evidence that it would be in D.T.'s best interest for her to have additional parenting time. Ms. Szymczak appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND COMMITTED AN ABUSE OF DISCRETION BY OVERRULING THE APPELLANT'S MOTION TO ENFORCE THE TRIAL COURT'S PREVIOUS JOURNAL ENTRY.

{¶7} Ms. Szymczak's first assignment of error is that the trial failed to timely schedule a review hearing, as required by its June 2008 journal entry. Although the parties dispute whether the trial court held a timely review of this matter, even if the trial court erred in failing to conduct a timely hearing, there is no relief this Court can grant Ms. Szymczak to correct that error.

{¶8} The sole purpose of an appeal is to provide an aggrieved party an opportunity to seek relief in the form of a correction of errors of the lower court. *Petitioners v. Bd of Twinsburg*

4

*Twp. Trustees*, 4 Ohio App.2d 171, 176 (9th Dist.1965). An appellate court is not required to rule on a question of law that cannot affect matters at issue in a case, however. *Carroll Cty. Bur. of Support v. Brill*, 7th Dist. No. 05 CA 818, 2005-Ohio-6788, ¶ 32, citing *Miner v. Witt*, 82 Ohio St. 237, 238 (1910); *see also Stemock v. Stemock*, 11th Dist. No. 2007-T-0072, 2008-Ohio-1131, ¶ 23-24 (appellate court could not enforce a temporary companionship order concerning a time period that had already expired).

{¶9} Ms. Szymczak asserts that the trial court failed to conduct a timely review of this matter, but there is no dispute that she was ultimately afforded the review hearing that she requested. Although she may have been temporarily aggrieved by waiting longer than she should have, we cannot undo the passage of time. As there is nothing that we can do to provide any relief to Ms. Szymczak, this Court will not address the merits of her first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND COMMITTED AN ABUSE OF DISCRETION BY OVERRULING THE APPELLANT'S MOTION TO MODIFY HER PARENTING TIME WITH [D.T.]

{¶10} Ms. Szymczak next asserts that the trial court erred by failing to grant her motion to remove the restrictions from her parenting time with her child and to reinstate a standard order. Pursuant to the parties' agreement, the trial court was to determine whether Ms. Szymczak should be returned to a standard parenting time order based on: (1) whether the parties had demonstrated good faith compliance with the requirements of the prior order and received "appropriate reports" from the therapists and (2) whether a modification of parenting time would be in the child's best interest. A review of the record reveals that the trial court erred both by implicitly finding that it had not received "appropriate reports" from the therapists to justify

removing the restrictions from Ms. Szymczak's parenting time and by concluding that a return to a standard parenting time order was not in D.T.'s best interest.

"Appropriate Reports" of the Therapists

{¶11} First, the trial court was required to determine the parties' good faith compliance with the 2008 order, "together with receipt of any appropriate reports of the therapist for [Ms.] Szymczak, the therapist of [the child], [the parties'] co-parenting counselor, and the Guardian Ad Litem." The agreement did not explain what it meant by "appropriate reports" of the therapists that would justify returning Ms. Szymczak to the standard parenting time order.

{¶12} The trial court apparently believed that "appropriate reports" from the therapists should focus on whether Ms. Szymczak had resolved her feelings of animosity toward Mr. Tanner and, because she had not, it found that she had not received favorable reports from the therapists. Given the surrounding circumstances in this case, as well as the four corners of the parties' agreement to restrict Ms. Szymczak's parenting time, however, a more reasonable construction of the term "appropriate reports" would focus on whether the therapists opined that Ms. Szymczak had remedied her behavioral problems through counseling, as that was the sole reason for restricting her parenting time. By focusing on the therapists' opinions about Ms. Szymczak's inward thoughts, rather than her outward behavior in the presence of her child, the trial court misconstrued the meaning of "appropriate reports" in the prior parenting time order.

{¶13} "The purpose of contract construction is to effectuate the intent of the parties[,]" which "is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987). Common, undefined words appearing in a written instrument "will be given their ordinary meaning unless manifest absurdity results, or

some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶14} The record in this case and the overall terms of the June 2008 order reveal that the sole reason for the restrictions on Ms. Szymczak's parenting time was her inappropriate behavior around her child, which was causing him to suffer emotional harm. Although Ms. Szymczak's counseling focused on her negative thoughts about Mr. Tanner, which were at the heart of her negative behavior, it was her outward attitude and behavior in the presence of her child that posed a risk to him, not her thoughts. The only reasonable construction of the parties' agreement is that Ms. Szymczak would engage in counseling and demonstrate to the therapists that she could modify her behavior so that she no longer acted on her ill feelings toward her ex-husband in the presence of her child.

{¶15} If Ms. Szymczak had never acted inappropriately around her child, but simply harbored negative feelings toward her ex-husband, this case would not be before us. Divorced parents often have negative feelings toward each other and courts do not intervene to restrict their parenting time unless their negative feelings cause inappropriate behavior that poses a threat to their child. It would lead to an absurd result to construe "appropriate reports" in the parties' agreement to require that Ms. Szymczak rid her mind of all negative thoughts about her ex-husband before she is entitled to a standard order of parenting time with her child.

{¶16} With this focus on whether the therapists gave "appropriate" or suitable reports about Ms. Szymczak's progress in therapy, the evidence before the trial court clearly demonstrated that, although she continued to have negative feelings about her ex-husband, Ms. Szymczak had made substantial progress in modifying her behavior around her child and was no longer behaving inappropriately around him. According to the testimony of the therapists, Ms.

Szymczak was cooperative in therapy and they were not aware of her current behavior posing any kind of threat to the child.

{¶17} There was absolutely no evidence that Ms. Szymczak continued to say anything negative about her ex-husband to D.T. or that she was otherwise behaving inappropriately around him. D.T. was doing well and having no problems, even after Ms. Szymczak began seeing him at school on a regular basis and having expanded and unsupervised visitation with him. Mr. Tanner even conceded that the unsupervised visits were going well.

{¶18} According to all the evidence before the trial court, there was no reason to continue restricting Ms. Szymczak's parenting time. If the trial court had properly focused on whether Ms. Szymczak had remedied her behavioral problems, rather than her feelings about her ex-husband, it should have concluded that the evidence before it included favorable reports from the therapists that supported expanding Ms. Szymczak's parenting time with D.T.

### Best Interest of the Child

{¶19} Ms. Szymczak asserts that, in concluding that it was not in D.T.'s best interest for Ms. Szymczak to have expanded parenting time, the trial court improperly focused almost entirely on her past behavior, rather than on her current relationship with D.T. The trial court's statutory authority to modify parenting time with the nonresidential parent was controlled by the child's best interest as determined by the factors set forth in R.C. 3109.051. *See Braatz v. Braatz*, 85 Ohio St.3d 40, 45 (1999). Although the trial court purported to apply the factors set forth in R.C. 3109.051(D), this Court has reviewed the record to determine whether those findings were supported by some competent, credible evidence. *Smith v. McLaughlin*, 9th Dist. No. 24890, 2010-Ohio-2739, ¶ 41 (explaining that arguments contesting a trial court's findings as to R.C. 3109.05.1(D) factors are, essentially, arguments that those findings are against the

manifest weight of the evidence). Because the record reveals a lack of evidence to support the trial court's findings on the specific best interest factors, its conclusion that the standard order of parenting time was not in the child's best interest was likewise erroneous.

{¶20} For example, under the factor set forth in R.C. 3109.051(D)(1), Ms. Szymczak's prior interaction with her child, the trial court focused only on her inappropriate behavior long before this hearing. At this hearing, the evidence was not disputed that the more recent interaction between Ms. Szymczak and D.T. had been positive, and that it continued to be positive after her visits were expanded and she was allowed to visit without supervision. Mr. Tanner's own testimony supported a finding of positive interaction.

{¶21} The trial court findings under R.C. 3109.051(D)(5), which focused on how well the child had adjusted to home and school and how well he was doing emotionally, likewise ignored the fact that D.T.'s more recent relationship with Ms. Szymczak had been good. During the time that D.T.'s behavior had improved and his adjustment to school and home had been positive, Ms. Szymczak was spending more time with him, not less. She was also volunteering at his school and the school was allowing her to have more contact with D.T. than Mr. Tanner was willing to do. Mr. Tanner conceded in his testimony that D.T. did not have any problems when Ms. Szymczak resumed unsupervised visits. Thus, the evidence did not support a finding that this factor weighed against expanded visitation time.

{¶22} Finally, the trial court's finding under R.C. 3109.051(D)(9), which focused on Ms. Szymczak's mental health, again focused on her past behavioral issues that had caused her child emotional harm and led to the restrictions on her parenting time. At the time of the hearing, although there was evidence that she continued to have negative thoughts about her ex-husband, there was absolutely no evidence that those thoughts were affecting her ability to be a

good parent to her child. Moreover, her therapist testified that Ms. Szymczak had no psychological problems that would pose a threat to her nine-year-old son and that he had no concerns about her ability to care for the child.

{¶23} Furthermore, the trial court's best interest analysis was premised on its mistaken understanding that Ms. Szymczak had the burden of demonstrating that it would be in the child's best interest to remove the visitation restrictions and return her to the "standard" order of parenting time. Both the Ohio Revised Code and the Local Rules of the Medina County Domestic Relations Court express a clear preference for the "standard" parenting time order for nonresidential parents, absent evidence that it is *not* in the child's best interest. R.C. 3109.051(F)(2) contemplates that the standard order is in the child's best interest, as it provides that a court's "discretion to *deviate* from its standard parenting time guidelines [must be] based upon factors set forth in [R.C. 3109.051(D).]" (Emphasis added.) See also R.C. 3109.051(A) (requiring that "[w]henever possible" a parenting time order shall ensure "frequent and continuing contact" by either parent unless such contact is "not" in the best interest of the child).

{¶24} The Medina County Domestic Relations Court adopted its version of the standard parenting time plan "to ensure that the minor child[ren] have frequent and consistent contact with both parents." Loc.R. 6.05 of the Court of Common Pleas of Medina County, Domestic Relations Division. If the parties fail to agree to their own plan, the standard order is presumed to be in the best interest of the child, absent "specific facts [presented] in a scheduled hearing to show why this parenting time schedule is not[.]" *Id.*

{¶25} Because the trial court did not have evidence that the standard order of parenting time was not in D.T.'s best interest, nor did it have competent, credible evidence under the factors in R.C. 3109.051(D) to justify its continued deviation from the standard order of

parenting time, it erred in denying Ms. Szymczak's motion to remove the restrictions on her parenting time and reinstate a standard order. Ms. Szymczak's second assignment of error is sustained.

## III.

{¶26} Ms. Szymczak's first assignment of error was not addressed and her second assignment of error is sustained. The judgment of the Medina County Common Pleas Court, Domestic Relations Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

11

WHITMORE, J.
CONCURS

DICKINSON, J.
DISSENTS, SAYING:

INTRODUCTION

{¶27} The trial court reduced Anne Szymczak's parenting time after her son, D.T., began having emotional problems that his therapist attributed to her. A year later, Ms. Szymczak and her ex-husband, Andrew Tanner, agreed to allow Ms. Szymczak some additional parenting time. They also agreed that her time could increase even more if they attended co-parenting therapy sessions and the court found it was in D.T.'s best interest. Two years later, the court held a hearing to consider whether Ms. Szymczak should be allowed more parenting time, but determined it was not in D.T.'s best interest. Ms. Szymczak has appealed, assigning as error that the trial court did not follow the parties' agreement and incorrectly determined that additional parenting time for her was not in D.T.'s best interest. I would affirm because any error that the trial court committed regarding the parties' agreement was harmless and it exercised proper discretion when it determined that allowing Ms. Szymczak additional parenting time is not in D.T.'s best interest.

BACKGROUND

{¶28} Ms. Szymczak and Mr. Tanner divorced in 2002 when D.T. was one year old. They initially agreed to shared parenting, but, later, decided that Mr. Tanner should be D.T.'s residential parent. In 2006, D.T.'s guardian ad litem moved for an emergency custody order, alleging that Ms. Szymczak had failed to attend required co-parenting therapy sessions and that

D.T. believed that Mr. Tanner and his family were evil and that it was unsafe for him to live with them. Following a hearing, the trial court determined that D.T. was in imminent danger of severe emotional and psychological damage and reduced Ms. Szymczak's parenting time to three-hour, biweekly, supervised visits.

{¶29} In June 2008, the parties agreed to allow Ms. Szymczak to have unsupervised visits and to expand her parenting time to seven hours every other Saturday and some Sundays if she and Mr. Tanner attended three co-parenting counseling sessions together. The court entered a journal entry adopting the parties' agreement. The agreement also provided that "the issue of parenting time visitation shall be set for a review hearing before this court in September 2008 and to be scheduled pursuant to the availability of the Visiting Judge in that month. This Court's review shall be a determination of [Ms.] Szymczak's and [Mr.] Tanner's good faith compliance with all of the provisions of this order together with receipt of any appropriate reports of the therapist for [Ms.] Szymczak, the therapist of [D.T.], [Ms. Szymczak's and Mr. Tanner's] co-parenting counselor, and the Guardian Ad Litem. The Court shall then determine if it is in the best interest of the minor child, [D.T], for parenting time visitation to be modified to [allow Ms. Szymczak even more parenting time]."

{¶30} Despite the journalized agreement, the court did not hold a review hearing in September 2008. It did schedule a "Status Conference" for October 2, 2008, and, on that day, scheduled another "Status Conference" for January 27, 2009. Between the status conferences, D.T.'s guardian ad litem moved for payment of his fees and for an order prohibiting the parties from calling their co-parenting therapist as a witness. He also moved to change the location at which the parties exchanged D.T. because the building that they thought would be a good place for it to take place was closed on weekends. The trial court set the guardian ad litem's motion

for fees for hearing on January 27, 2009. On the day of the hearing, the trial court granted the guardian ad litem's motions. It also terminated him as D.T.'s guardian ad litem. It further ordered that "all other orders of this court not inconsistent with this order shall remain in full force and effect."

{¶31} In September 2009, Ms. Szymczak moved to enforce the June 2008 journal entry and to modify her parenting time. In August 2010, the trial court held a two-day trial on Ms. Szymczak's motions, receiving testimony from Ms. Szymczak, her therapist, Mr. Tanner, and the parties' co-parenting therapist. It subsequently denied Ms. Szymczak's motions. In its journal entry, the court noted that Ms. Szymczak's parenting time had been reduced because of her extreme bitterness and anger toward Mr. Tanner. It found that, even though working on her anger had been the focus of her individual therapy, Ms. Szymczak's therapist opined that her prognosis was only "fair." It also found that Ms. Szymczak's individual therapist and the parties' co-parenting therapist continued to be concerned about whether her bitterness toward Mr. Tanner would impair her ability to parent D.T. effectively. The court determined that, even though Ms. Szymczak's mental health had been the central impediment to her parenting, she had "yet to overcome her anger and hostility toward [Mr. Tanner] and her conceptualization that she has been victimized by him." It concluded that, because Ms. Szymczak had not "made significant strides in her own therapy or co-parenting therapy to allow for expanded visitation and companionship time" and had failed to present any evidence that it would be in D.T.'s best interest for her to have additional parenting time, her motion to modify parenting time should be denied.

MOTION TO ENFORCE ENTRY

{¶32} Ms. Szymczak's first assignment of error is that the trial court incorrectly denied her motion to enforce its June 2008 journal entry. She has argued that the court failed to schedule a review hearing, as required by the journal entry. She has also argued that, even though the court did not hold a review hearing, it wrote in its September 2010 journal entry that it had held two of them: one in October 2008 and one in January 2009, and that it had determined at those hearings that she had not met the requirements for expanded visitation. According to Ms. Szymczak, while the court may have held "status conferences" in October 2008 and January 2009, it did not hold a "review hearing," let alone decide whether the requirements of the June 2008 journal entry had been met.

{¶33} It is not clear from the record what occurred at the October 2008 and January 2009 meetings. The trial court mailed a "Notice of Hearing" to the parties for each date, indicating that the case would come before the court for a "status conference." It also mailed a notice of hearing to the parties regarding the guardian ad litem's motion for fees, indicating that it would be heard at the same time as the January 2009 "status conference." Following the January hearing, the trial court issued two orders, one granting the guardian ad litem's motion for fees, and one granting his motions to limit the testimony of the parties' co-parenting therapist and to change the location of where the parties exchanged custody. The orders granting the guardian ad litem's motions indicate that the motions "came on for hearing." Because Ms. Szymczak has not provided this Court with a transcript of what occurred at the "status conferences," however, we must presume that the trial court correctly wrote that it conducted review hearings on those dates. See *Knapp v. Edwards Labs.*, 61 Ohio St. 2d 197, 199 (1980).

{¶34} Ms. Szymczak has also argued that the court incorrectly wrote in its September 2010 journal entry that she was not allowed to receive additional parenting time under the June 2008 journal entry until she submitted reports from each of the therapists and D.T.'s guardian ad litem. Under the June 2008 journal entry, the trial court was to hold a review hearing in September 2008 to determine (1) whether Ms. Szymczak and Mr. Tanner had complied in good faith with all the provisions of the order and (2) whether it was in D.T.'s best interest for Ms. Szymczak to receive more parenting time. In making its determination, the court was to receive "any appropriate reports" from the therapists and guardian ad litem, but only if those reports existed. I, therefore, agree that the trial court incorrectly wrote in its September 2010 journal entry that it was not allowed, under the June 2008 journal entry, to award Ms. Szymczak additional parenting time until she submitted a report from each of the therapists and the guardian ad litem.

{¶35} Despite the trial court's mistake, Ms. Szymczak was only entitled to an increase in her parenting time under the June 2008 journal entry if the trial court concluded that it was in D.T.'s best interest. Ms. Szymczak has argued that the trial court failed to hold an evidentiary hearing to determine that issue. After Ms. Szymczak moved for modification of her parenting time, however, the trial court conducted a two-day trial to determine whether an increase in Ms. Szymczak's parenting time was in D.T.'s best interest. Ms. Szymczak has not established that the court's failure to hold a hearing on that issue earlier affected her substantial rights. Her first assignment of error should be overruled. Civ. R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

BEST INTERESTS OF THE CHILD

{¶36} Ms. Szymczak's second assignment of error is that the trial court incorrectly overruled her motion to modify parenting time. A trial court's decision to modify visitation is governed by Section 3109.05.1 of the Ohio Revised Code. *Braatz v. Braatz*, 85 Ohio St. 3d 40, 44 (1999). Section 3109.05.1(A) directs courts to "make a just and reasonable order . . . [regarding] parenting time . . . ensur[ing] the opportunity for both parents to have frequent and continuing contact with the child, unless [that] . . . would not be in the best interest of the child." The Ohio Supreme Court has held that a trial court has discretion to modify visitation orders, based on a consideration of the factors enumerated in Section 3109.05.1(D), to create visitation conditions that are in the best interest of a child. *Braatz v. Braatz*, 85 Ohio St. 3d 40, 45 (1999).

{¶37} If a party challenges a trial court's findings under the factors listed in Section 3109.05.1(D), we review the record to determine whether the findings are supported by some competent, credible evidence. *Smith v. McLaughlin*, 9th Dist. No. 24890, 2010-Ohio-2739, ¶ 41 (explaining that arguments contesting a trial court's findings as to Section 3109.05.1(D) factors are, essentially, arguments that those findings are against the manifest weight of the evidence). Because the ultimate decision regarding visitation rights is trusted to the discretion of the trial court, however, this Court should not disturb its decision absent an abuse of discretion implying that "the court's attitude is unreasonable, arbitrary or unconscionable." *Booth v. Booth*, 44 Ohio St. 3d 142, 144 (1989) (quoting *Blakemore v. Blakemore,* 5 Ohio St. 3d 217, 219 (1983)).

{¶38} Ms. Szymczak has contested four of the trial court's findings under Section 3109.05.1(D). Under that section, the court had to consider "[t]he prior interaction and interrelationships of the child with the child's parents[,]" "[t]he child's adjustment to home, school, and community[,]" "[t]he health and safety of the child[,]" and "[t]he mental and

physical health of all parties[.]" R.C. 3109.05.1(D)(1), (5), (7), (9). Regarding prior interactions, the court found that "[t]he prior interaction and relationships of the child and his parents have been at the heart of the mother's ineffective parenting. The record is extensive concerning the child's need[ ] to be removed from the care of his mother and to have his interaction with his mother curtailed and limited because of the mother's extreme bitterness and anger toward the father. The mother's anger and bitterness has resulted in her dysfunctional parenting of the child." Regarding D.T.'s adjustment, the court found that, "[s]ince the time of the curtailment of the mother's contact with the child, the child's progress at home and in school has significantly improved. The child is no longer subject to emotional 'melt downs.' The child continues in his individual psychotherapy addressing the issues previously mentioned[.]" Regarding D.T.'s health and safety, the court found that "the child's health and safety required immediate and continued intervention relative to the behavior of the mother in her interactions with the child. The mother's own therapist testified that while some progress has been made, her prognosis has changed from only 'poor' to 'fair.' Both the mother's therapist and the parties' co-parenting therapist stress that the focal point of their therapy remains the mother's bitterness toward . . . the father and the consequential impairment of her abilities to parent the child." Regarding the parties' mental and physical health, the court found that "[t]he mental health of the mother has been, and yet remains, the central impediment to her effective parenting of the parties' child. She is yet to overcome her anger and hostility toward the father and her conceptualization that she has been victimized by him. Both her own therapist and the co-parenting therapist testified that much work on her part still needs to be done."

{¶39} Ms. Szymczak has argued that the court improperly focused in its decision on what happened before June 2008. According to her, it should have made its findings based on

the evidence that was presented at the September 2010 trial, including Mr. Tanner's testimony that her parenting time with D.T. was going well, that the transition to unsupervised time did not cause D.T. any problems, and that D.T. currently has no emotional or psychological problems that require therapy. She has also argued that the court ignored the fact that her therapist has no concerns about her ability to care for D.T. and the co-parenting therapist's testimony that he was not aware of either parent making negative remarks about the other in D.T.'s presence. She has further argued that there was no evidence that her current mental health issues affect her ability to parent D.T. Regarding her relationship with Mr. Tanner, Ms. Szymczak has argued that, even if it is as good as it will ever be, it does not mean that she is incapable of being an effective parent.

{¶40} Ms. Szymczak's therapist testified that, since Ms. Szymczak has been in therapy with him, he is not aware of her saying anything negative to D.T. about Mr. Tanner. He testified that one of the problems Ms. Szymczak has is focusing on the past too much, including having been the victim of physical abuse. He said that, although she has made significant progress moving past that issue, she vacillates "from being focused on the past and moving more towards the present and future." Because she also desires to have the past wrongs righted, he said her overall prognosis is "fair." He also said that they have worked on the "very negative" attitude Ms. Szymczak has displayed towards Mr. Tanner at their co-parenting therapy sessions, and he opined that Ms. Szymczak has improved on that issue. According to the therapist, Ms. Szymczak still has a lot of anger towards Mr. Tanner and has a difficult time acknowledging that Mr. Tanner is a good parent. He testified, however, that Ms. Szymczak does not have any psychological problems that would give him any concern about her ability to take care of D.T.

{¶41} The parties' co-parenting therapist testified that Ms. Szymczak's demeanor towards Mr. Tanner varies. He recounted one incident, a month or two before the trial, in which Ms. Szymczak "became angry at Mr. Tanner, got into his personal space, [and] pointed a finger in his face[,] yelling at him[.]" He characterized her actions as sarcastic and dramatic. He said that Ms. Szymczak has acknowledged that she gets angry and has, at times, apologized for her actions. He also said that, overall, Ms. Szymczak has been cooperative during therapy sessions. He agreed with Ms. Szymczak's therapist that she has had "a difficult time getting past her anger towards Mr. Tanner, getting past her victim's mentality in regards to what happened to her in the past and looking forward towards co-parenting with Mr. Tanner in the future[.]" He also opined that the parties have a "very complicated and challenging dynamic."

{¶42} Ms. Szymczak is correct that the trial court's findings under Section 3109.05.1(D)(1) focused on what occurred before June 2008. Under that section, however, it was required to consider her "prior" interaction with D.T. In November 2006, D.T.'s guardian ad litem moved for an emergency custody order because "[D.T.] has expressed feelings of being unsafe in the Tanner house based upon information received by [him] from [Ms. Szymczak]; . . . [Ms. Szymczak] has indicated that the entire Tanner family is 'evil'; . . . [Ms. Szymczak ] has evidently indicated that she loves only [D.T.] and has no one else thus creating distress in [D.T.] when he has to leave the home of mother. . . . [and] Ms. Szymczak has indicated to [D.T.] that everyone is 'evil' and that [Ms. Szymczak] and [D.T.] 'must be brave' like Jesus when Jesus was put on the cross by the bad people." Following a hearing, the trial court granted the motion, finding that D.T. was experiencing "extreme tension, confusion in reconciling opposing realties as presented by his mother and father, dysfunctional thoughts of the necessity of his father's

death to separate concepts of good from evil, and preoccupation with germs in the context of differing good from evil, all with overtones of religiosity."

{¶43} Regarding the court's findings under Section 3109.05.1(7) & (9), I believe the court correctly examined the entire history of Ms. Szymczak's relationship with D.T. The court did not exclusively focus on what happened before June 2008, but also considered the therapists' testimony about Ms. Szymczak's individual progress, the co-parenting therapy sessions, and Ms. Szymczak's conceptualization of herself as a victim. The trial court's determination that Ms. Szymczak's anger towards Mr. Tanner has been the main impairment of her ability to parent D.T. is supported by some competent, credible evidence.

{¶44} Regarding the court's findings under Section 3109.05.1(D)(5), concerning D.T.'s adjustment to home, school, and community, I note that, although the court correctly recounted the improvements D.T. made after Ms. Szymczak's parenting time was reduced, it did not address how he might react to a restoration of parenting time. Ms. Szymczak, however, did not present any evidence on that issue. Mr. Tanner testified that D.T. did not have any problems when Ms. Szymczak resumed unsupervised visits, but there was no evidence presented regarding what effect additional parenting time might have. To the extent that the trial court could have only speculated about the effect additional parenting time would have on D.T., I conclude that it correctly did not make a finding of fact on that issue.

{¶45} The record establishes that Ms. Szymczak has significant anger towards Mr. Tanner. In the past, that anger has caused her to say things to D.T. about Mr. Tanner and his family that have caused D.T. to have emotional and psychological problems. Even though Ms. Szymczak has refrained from disparaging Mr. Tanner in front of D.T. since she has resumed unsupervised visits, the trial court remained concerned that she has not made enough progress in

therapy to avoid that becoming an issue again if her parenting time were increased. The parties' co-parenting therapist testified about Ms. Szymczak's anger first hand and recounted an outburst of that anger that occurred only a couple of months before the trial. Accordingly, I conclude that the trial court exercised proper discretion when it refused to increase Ms. Szymczak's parenting time at this time. Ms. Szymczak's second assignment of error should be overruled.

## CONCLUSION

{¶46} The trial court exercised proper discretion when it determined that Ms. Szymczak failed to demonstrate that an increase in her parenting time was in D.T.'s best interest. The judgment of the Medina County Common Pleas Court, Domestic Relations Division, should be affirmed.

APPEARANCES:

DAVID H. FERGUSON, Attorney at Law, for Appellant.

JAMES L. LANE, Attorney at Law, for Appellee.