JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by D.S.,[1] D.H.'s legal guardian, from the trial court's order adopting the magistrate's decision, which found that it was in D.H.'s best interests to have counseling by a family therapist and then supervised visits with her biological father, G.M. D.S., who was appointed D.H.'s legal guardian in 1994 and has lived with her in Texas since then, contends, for various reasons, that the decision was wrong. We affirm. *Page 2 
 {¶ 2} On January 21, 1994, the juvenile court committed D.H., who was then nearly ten months old, to the temporary custody of D.S. D.H.'s mother, a drug addict, was homeless at the time and G.M., who did not know that he was D.H.'s father, did not provide any care or support for her. The order indicated that D.H. was to eventually return to her parents.
 {¶ 3} G.M. learned that he was D.H.'s biological father in 1996, after D.S. served him with an action to collect child support. After that, G.M. continually paid child support of $582.85 per month, plus $12,000 in arrears, and maintained health coverage for D.H.
 {¶ 4} In October 1999, G.M. moved the court for custody of D.H., alleging that D.S. had refused his many efforts to see her and to obtain information about her. The court denied the motion without a hearing or explanation.
 {¶ 5} In June 2004, G.M. moved the court to establish visitation. He also moved for a review of his child support obligations because his income had decreased upon his retirement.
 {¶ 6} After several pretrials, the trial court appointed a guardian ad litem for D.H. The court also referred D.S. and G.M. to Dr. Douglas Waltman, a psychologist, for a custody evaluation relating to the visitation issue.
 {¶ 7} D.S. subsequently moved to show cause and for legal fees regarding G.M.'s alleged failure to pay his portion of several uninsured medical expenses for *Page 3 
D.H. G.M. moved for attorneys' fees in opposing D.S.'s motion because the expenses, some incurred six years earlier, could have been paid if D.S. had submitted claims to G.M.'s health insurer. D.S. withdrew her motion. She later sent two letters to the magistrate from doctors who had examined D.H. and opined that it was not in her best interest to establish a relationship with her father. D.S. did not serve the letters on opposing counsel.
 {¶ 8} The magistrate subsequently denied D.S.'s motions to terminate jurisdiction and to dismiss the case, or in the alternative, to declare Ohio an inconvenient forum. D.S. then moved the court to set aside the magistrate's order denying her motions, which the court denied.
 {¶ 9} After numerous pretrials, all attended by D.S.'s attorney, the court set trial for June 28, 2006. On that day, D.S. moved for a continuance of the trial because she was in Texas caring for her two other children. In the alternative, D.S. moved to present her testimony by phone. D.S. also moved the court to prohibit G.M. from calling any witnesses at trial because he had not provided a witness list to her or filed a list with the court. The magistrate denied both motions.
 {¶ 10} After trial, the magistrate filed his decision, which ordered that G.M. could initially visit D.H. while supervised by a family therapist in Texas, who would counsel the child prior to the visit. The court ordered that the matter be reviewed in several months to determine a final visitation schedule for G.M. and his daughter. *Page 4 
The trial court subsequently denied D.S.'s objections to the magistrate's decision and adopted the decision.
 {¶ 11} For clarity, we address D.S.'s assignments of error out of order. We address her jurisdictional concerns first. She complains that the trial court erred in denying her motion to terminate jurisdiction and her subsequent motion to dismiss or, in the alternative, to declare Ohio an inconvenient forum. We review the trial court's decision to exercise jurisdiction under an abuse of discretion standard. Bowen v.Britton (1993), 84 Ohio App.3d 473, 478.
 {¶ 12} Ohio adopted the Uniform Child Custody Jurisdiction Act ("UCCJA") in 1977, codified at R.C. 3109.21 to 3109.37. The Act was intended to "avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child."State ex rel. Aycock v. Mowrey (1989), 45 Ohio St.3d 347, 349. Because custody determinations include visitation rights, the UCCJA applies to this matter. R.C. 3109.21(B).[2]
 {¶ 13} Generally, the court in which a custody decree is originally issued retains continuing jurisdiction. Loetz v. Loetz (1980),63 Ohio St.2d 1, 2. A state court that has rendered an initial custody decree has exclusive jurisdiction over any *Page 5 
ongoing custody dispute if that state's jurisdictional requirements are met and the state remains the residence of at least one party.Justis v. Justis (1998), 81 Ohio St.3d 312, 317. Here, G.M. is obviously a resident of Ohio.
 {¶ 14} Ohio's jurisdictional requirements in child custody matters are set forth in R.C. 3109.22. As relevant to this case, an Ohio court may exercise jurisdiction if it is in the child's best interest that an Ohio court assume jurisdiction because the child and his parents, or the child and at least one party to the proceeding, have a significant connection with Ohio, and there is substantial evidence in Ohio concerning the child's "present or future care, protection, training, and personal relationships[.]"
 {¶ 15} Under these guidelines, the trial court did not err in exercising its continuing jurisdiction in this matter. D.H.'s mother, father, and maternal grandparents, whom she visits on a regular basis, all live in Ohio. Thus, despite living in Texas for ten years, D.H. still has a significant connection with Ohio. Moreover, substantial evidence related to G.M.'s ongoing concern for his daughter through the years and D.S.'s refusal to permit him access to D.H., as well as evidence regarding his ability to care for D.H. and develop a personal relationship with her if permitted visitation rights, is available in Ohio.
 {¶ 16} Significantly, D.S. filed no pleadings in Texas invoking the jurisdiction of any Texas court and no Texas court ever assumed jurisdiction in this case. Thus, *Page 6 
there was never any jurisdictional conflict between Ohio and Texas and no real question as to whether Ohio should exercise jurisdiction regarding G.M.'s request for visitation. D.S.'s reliance on Mayor v.Mayor (1991), 71 Ohio App.3d 789, where this court found Illinois to be a more convenient forum than Ohio for resolution of the parties' custody, visitation and support dispute, is therefore misplaced. InMayor, a "litany of motions" had been filed "back and forth" in Ohio and Illinois courts by former spouses, both of whom sought modification of the Ohio court's order regarding visitation, support, and custody. This court analyzed the state courts' concurrent jurisdiction and concluded that Illinois was a more convenient forum. Here, however, because no Texas court had ever assumed jurisdiction, there was no reason for the Ohio juvenile court to terminate its ongoing jurisdiction.
 {¶ 17} Likewise, Ohio is not an inconvenient forum for resolution of this matter. Under R.C. 3109.25(A), a court that has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a determination under the circumstances of the case and that a court of another state is a more appropriate forum.
 {¶ 18} R.C. 3109.25(C) sets forth several factors for the court to consider in making this determination, although it is not limited to these factors. The court may consider whether another state is or recently was the child's home state, another *Page 7 
state has a closer connection with the child and his family or with the child and one or more of the parties, if substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state, or the parties have agreed on another forum.
 {¶ 19} Here, substantial evidence regarding D.H.'s future care and relationship with G.M. was available in Ohio, even though her home state is Texas. Moreover, D.S. availed herself of the same jurisdiction she claimed was inconvenient when she sought affirmative relief from the juvenile court in her motion to show cause and for legal fees. In addition, she submitted ex parte evidence regarding the merits of the case to the court when she sent letters to the magistrate from two doctors who had examined D.H. and opined about the advisability of D.H. establishing a relationship with her father. D.S. is now estopped from complaining about the very jurisdiction she invoked.
 {¶ 20} Likewise, D.S.'s argument that her motion to terminate jurisdiction should have been granted under R.C. 3127.16, is without merit. That statute did not become effective until April 11, 2005, well after G.M. filed his motion for visitation. A motion made in a child custody proceeding before April 11, 2005 is governed by the law in effect when the motion was made, which, as discussed above, was the UCCJA. R.C. 3127.53. *Page 8 
 {¶ 21} Finally, D.S.'s argument that the court should have held a hearing regarding her motions is without merit. Although, as this court found in Mayor, the "better practice" would have been to hold a hearing regarding the motion, a court may rule on motions without oral hearing upon submission of briefs in support of and opposition to the motion. Civ.R. 7(B)(2).
 {¶ 22} Accordingly, we hold that the trial court did not abuse its discretion in denying D.S.'s motions to terminate jurisdiction and motion to dismiss, or, in the alternative, to declare Ohio an inconvenient forum. Furthermore, the trial court did not err in denying D.S.'s motion to set aside the magistrate's order denying these motions.
 {¶ 23} Appellants' first, second, and fifth assignments of error are therefore overruled.
 {¶ 24} D.S. next argues that the trial court erred in denying the motions she made on the morning of trial. In her third assignment of error, D.S. contends that the trial court erred in denying her motion in limine to preclude G.M. from calling any witnesses at trial, because G.M. did not submit a witness list to her prior to trial, as required by Rule 30(A) of the Cuyahoga County Court of Common Pleas, Juvenile Division. D.S. does not assert that she was prejudiced by the testimony; she merely complains that the trial court did not follow its local rule. *Page 9 
 {¶ 25} Courts are given latitude in following their own local rules; the enforcement of court rules is within the discretion of the court.Ciokajlo v. Ciokajlo (July 28, 1982), Hamilton App. No. C-810158;Hanes v. Black (1945), 78 Ohio App. 394. Without any demonstration of prejudice by D.S., we find no abuse of discretion by the trial court in denying her motion in limine.
 {¶ 26} Appellant's third assignment of error is overruled.
 {¶ 27} In her sixth assignment of error, D.S. argues that the trial court erred in denying her motion for a continuance of trial or, in the alternative, to allow her to present her testimony by telephone. Again we disagree.
 {¶ 28} We review the grant or denial of a motion for a continuance for an abuse of discretion. Ma v. Tu (Dec. 14, 2000), Cuyahoga App. No. 77207, citing Burton v. Burton (1999), 132 Ohio App.3d 473.
 {¶ 29} "To constitute a sufficient ground for a continuance because of the absence of a party, it must appear that the absence is unavoidable, and not voluntary; that his presence at the trial is necessary; that the application is made in good faith; and that he probably will be able to attend court at some reasonable future time." State ex rel. Buck v.McCabe (1942), 140 Ohio St. 535, paragraph two of the syllabus.
 {¶ 30} In light of these factors, the trial court did not abuse its discretion in denying D.S.'s motion for a continuance. At the time of trial, the matter had been *Page 10 
pending for nearly two years. The June 28, 2006 trial date had been set two months earlier at a pretrial attended by D.S.'s counsel. Thus, D.S. had notice and sufficient time to make arrangements for the care of her children so she could attend trial and her absence was not unavoidable. Furthermore, it is questionable whether the motion — made on the morning of trial in a case that had been pending for so long-was made in good faith.
 {¶ 31} D.S.'s argument that, under R.C. 3127.10(B), she should have been allowed to present her testimony by telephone, likewise fails. Under R.C. 3127.10(B), an Ohio court may permit an individual residing in another state to testify by telephone or other electronic means. This statute went into effect on April 11, 2005, and is not applicable to this matter, which was filed before that date. See R.C. 3127.53.
 {¶ 32} Appellant's sixth assignment of error is overruled.
 {¶ 33} In her seventh assignment of error, D.S. argues that the trial court erred in not appointing counsel for D.H. under R.C. 2151.352, which provides that "[c]ounsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them."
 {¶ 34} In a matter not involving the termination of parental rights, a child's parents, guardian, or custodian can adequately represent the child's interests when *Page 11 
those interests are aligned with those of the parents, guardian, or custodian, and in such situation, appointment of independent counsel for the child is not necessary. In re: Estes, 4th Dist. No. 04CA11,2004-Ohio-5163, at T|10; In re Smith (2001), 142 Ohio App.3d 16, 20.
 {¶ 35} There is nothing in the record that suggests that D.H.'s interests were not aligned with those of D.S., her legal guardian, and that D.S. did not adequately represent D.H.'s interests. D.H. told the guardian ad litem that she did not wish to visit G.M. and this was D.S.'s contention throughout the proceedings. D.S. attempts to create a conflict which would necessitate separate counsel for D.H. by arguing that she "suggested a visitation schedule and was arguably open to the same," but her argument is laughable in light of the record, which demonstrates that she used every opportunity to thwart G.M.'s attempts to visit his child. Dr. Waltman reported that D.S. had opposed visits and encouraged D.H.'s negative feelings toward her father.
 {¶ 36} D.S. also argues that the court should have appointed separate counsel for D.H. because the guardian ad litem did not adequately protect her interests. She notes that the guardian ad litem recommended visitation for G.M., despite D.H.'s wishes to not have any contact with G.M. The role of the guardian ad litem, however, is to investigate the child's situation and then ask the court to do what the guardian feels is in the child's best interests. In re Baby Girl Baxter (1985), *Page 12 17 Ohio St.3d 229, 232. "Because a guardian ad litem owes his or her principal duty to the court, a guardian may properly reject the child's expressed wishes and support a contrary position, one that the guardian believes is in the child's bests interests." In re Alfey, 2nd Dist. No. 01CA0083, 2003-Ohio-608, at ¶ 18. We find nothing in the record to suggest that the guardian's recommendation that G.M. be permitted visitation with his daughter did not adequately protect D.H.'s best interests.
 {¶ 37} Because the interests of D.S. and D.H. did not conflict, and D.S. adequately represented those interests, the trial court did not err by not appointing separate counsel for D.H.
 {¶ 38} Appellant's seventh assignment of error is overruled.
 {¶ 39} Finally, in her fourth assignment of error, D.S. contends that the trial court did not consider all of the 15 factors set forth in R.C.3109.051(D) before making its decision to grant G.M. visitation with D.H.
 {¶ 40} R.C. 3109.051(D) lists 15 factors that the trial court must consider when granting or modifying parental visitation rights and gives the court discretion to consider any other factor it finds relevant. The magistrate's written decision adequately indicates that he considered all 15 R.C. 3109.051(D) factors. The decision specifically lists the factors and the magistrate "checked off" 12 of the 15 R.C. 3109.051(D) factors as applicable to this case. In addition, the magistrate noted that he had considered the custody evaluation prepared by Dr. Waltman. *Page 13 
Accordingly, we hold that the trial court adequately considered the R.C. 3109.051(D) factors in rendering its decision.
 {¶ 41} Appellant's fourth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and SEAN C. GALLAGHER, J., CONCUR
[1] The parties are referred to by their initials in accordance with this court's policy regarding non-disclosure of identities in juvenile cases.
[2] The UCCJA was repealed on April 11, 2005, when Ohio enacted the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). R.C.3127.01 et seq. The UCCJEA has prospective application only. R.C.3127.53. Because G.M.'s motion for visitation was filed on June 16, 2004, the UCCJA applies to this case. *Page 1