[Cite as *Polacheck v. Polacheck*, 2013-Ohio-5788.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| DAVID MARK POLACHECK | | C.A. Nos.     26551 |
| | | 26552 |
|      Appellee | | |
| | | |
| v. | | |
| | | APPEAL FROM JUDGMENT |
| AMY POLACHECK | | ENTERED IN THE |
| | | COURT OF COMMON PLEAS |
|      Appellant | | COUNTY OF SUMMIT, OHIO |
| | | CASE No.     2011-05-1474 |

DECISION AND JOURNAL ENTRY

Dated: December 31, 2013

---

BELFANCE, Judge.

{¶1} Appellant, Amy Polacheck ("Wife"), appeals from her divorce decree in the Summit County Court of Common Pleas, Domestic Relations Division. The trial court incorporated the parties' agreement as to child and spousal support and the division of most of their property and debts but allocated sole responsibility to Wife for the student-loan debt incurred during the marriage. Because the trial court failed to identify and apply appropriate equitable considerations to support its allocation of this marital debt, this Court reverses that aspect of the judgment and remands the matter to the trial court.

I.

{¶2} Wife married David Polacheck ("Husband") on December 28, 1996, and three children were born during their marriage. Husband, a business executive who earned an annual six-figure salary plus bonuses, provided the primary financial support for the family throughout the marriage while Wife took care of the household and the children. During the later years of

the marriage, Wife attended nursing school and incurred approximately $40,000 in student-loan debt. Wife received her nursing degree shortly before the marriage ended and secured employment with an annual salary of $58,000.

{¶3} Husband moved out of the marital home during May 2010. Shortly afterward, Wife's boyfriend moved into the home with his two children, which created additional strain on the relationship between Husband and Wife. On May 17, 2011, Husband filed a complaint for divorce. During the next year, the trial court issued temporary orders pertaining to various issues including child support and spousal support for Wife. Wife had also alleged that the paternal grandfather posed a threat to the children, so a temporary order was issued that the children have no contact with him.

{¶4} Despite the strain between the parties, they were able to reach an agreement through mediation on most issues before the court, including child support, a shared parenting plan, and that Wife would receive spousal support of $1,000 per month for one year. The parties were unable to agree on the allocation of the student-loan debt as well as whether the children should be allowed to have contact with the paternal grandfather. The matter proceeded to a hearing on those contested issues only, but only the allocation of the student-loan debt is at issue on appeal. The parties did not dispute that Wife had taken out student loans during the marriage, such that they were marital debt, or that the outstanding balance on the loans was approximately $40,000. Their dispute at the hearing focused on whether some of the proceeds were used for family vacations in addition to Wife's schooling.

{¶5} The trial court allocated the student-loan debt solely to Wife, without any offset in the overall division of property and debts. Wife appeals from the final divorce decree and raises four assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN THE ENTRY OF ITS FINDING [AND] ORDER DATED MAY 2, 2012 IN ALLOCATING RESPONSIBILITY FOR THE PAYMENT OF APPELLANT'S STUDENT LOANS INCURRED DURING THE MARRIAGE SOLELY TO APPELLANT.

{¶6}     Wife's first assignment of error is that the trial court erred in allocating solely to her the student-loan debt incurred during the marriage.  The parties agreed that the student-loan debt of approximately $40,000 was a marital debt but disputed how it should be allocated.  Wife argued that it was equitable to allocate the debt equally between the parties, while Husband argued that the court should allocate sole responsibility for the student-loan debt to Wife.  Although we do not reach the merits of what constitutes an equitable division of the debt under the circumstances of this case, we agree with Wife that the matter should be reversed and remanded to the trial court for further consideration of the equitable division of the debt.

{¶7}     As with the division of marital property, the equitable division of marital debt is a matter subject to the exercise of the trial court's discretion.  Accordingly, we review the trial court's decision for an abuse of discretion.  An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶8}     The authority of a divorce court to order a division of a divorcing couple's property and debts, as well as to provide for ongoing financial sustenance, is derived from the statutory law.  *See Wolfe v. Wolfe*, 46 Ohio St.2d 399, 414 (1976).  While property division is specifically addressed in the Ohio Revised Code, marital debt is not.  With respect to property division, R.C. 3105.171(C)(1) requires an equal division of marital property unless the trial court

finds an equal division to be inequitable. In addition, the statute contains specific considerations in achieving the equitable division of marital property. *See* R.C. 3105.171(F). By contrast, the Ohio legislature has not specifically addressed the allocation of marital debt. As a result, some courts have equated marital debt with property and applied R.C. 3105.171(C)(1)'s presumption of equal division unless such would prove inequitable. *See, e.g., Easterling v. Easterling,* 2d Dist. Montgomery No. 18523, 2001 WL 369734, \*5 (Apr. 13, 2001).

{¶9} In this case, it appears that the trial court's allocation of the student-loan debt was premised entirely on the presumption that Wife was the sole beneficiary of her degree and, as such, she should shoulder the entire marital debt. The issue presented in this case is what considerations should inform the trial court's exercise of its discretion when equitably dividing marital student-loan debt.

**Statutory Background**

{¶10} Prior to September 1974, the authority of the domestic relations court to divide the parties' property and finances upon divorce was extremely broad with few mandatory factors to guide the court's discretion. The court's authority to divide property and to award what is now called "spousal support" fell under the statutory provision for "alimony." The trial court had authority to award alimony as it deemed "reasonable" with "due regard" to: "the property which came to either by their marriage[;] the earning capacity of either[;] and the value of real and personal estate of either[.]" Former R.C. 3105.18; *Woodworth v. Woodworth*, 8th Dist. Cuyahoga No. 35506, 1977 WL 201176, \*2 (Feb. 3, 1977).

{¶11} In 1970, the American Law Institute published the Uniform Marriage and Divorce Act, with a stated purpose of making uniform divorce laws across the country. Uniform Marriage and Divorce Act, Section 103 (1970). Of relevance here, the Uniform Act set forth

specific factors that a trial court must consider in its disposition of property upon divorce, as well as factors to be considered in awarding ongoing financial support to either spouse. A primary factor to be considered in the division of property was the "economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for a reasonable period to the spouse having custody of any children." Uniform Marriage and Divorce Act, Section 307 [Alternative B] (1970).

{¶12} During the 1970s, many states enacted property distribution statutes that adopted the Model Act's equitable factors to guide the trial court's discretion when distributing property between the spouses. *See, e.g.*, Iowa Code Ann. 598.21; Mahoney, *The Equitable Distribution of Marital Debts*, 79 UMKC L. Rev. 445, 445 (2010). Many states included the "economic circumstances" factor almost verbatim. *See, e.g.*, Ind.Code 31-15-7-5; Me.Rev.Stat.Ann., Section 953(1)(C); Colo.Rev.Stat.Ann., Title 19-A, 14-10-113(C).

{¶13} Effective September 23, 1974, the Ohio General Assembly amended R.C. 3105.18 to place specific constraints on the trial court's broad authority to award alimony. Eleven specific factors, similar to those set forth in the Model Act, were added to the statute, which was further amended to provide that the trial court "shall consider" each of the relevant factors before awarding alimony. Former R.C. 3105.18(B). Ohio did not adopt a separate provision pertaining to property division, but the distribution of property remained part of the alimony award. *See, e.g., Cherry v. Cherry*, 66 Ohio St.2d 348, 352 (1981) (explaining that "alimony" was composed of two separate elements: "a division of the marital assets and liabilities" and "periodic payments for sustenance and support."). Consequently, the 11 equitable factors pertaining to an award of "alimony" encompassed factors similar to those of the

Uniform Marriage and Divorce Act pertaining to an award of support as well as for the disposition of property. *See* former R.C. 3105.18; Uniform Marriage and Divorce Act, Sections 307 and 308 [Alternative B] (1970).

{¶14} Because Ohio's alimony statute failed to address the practical realities of dividing certain types of property, such as retirement benefits, the Ohio Supreme Court fashioned additional guidelines that the trial court should consider. *See, e.g., Hoyt v. Hoyt*, 53 Ohio St.3d 177 (1990), paragraphs one and two of the syllabus (recognizing that dividing retirement benefits involved many considerations that were not then addressed by the statute such as whether those benefits were vested, the desirability of keeping the asset intact, etc.).

{¶15} Shortly after *Hoyt* was decided, the Ohio General Assembly enacted a property division statute that specifically addressed many of the shortfalls that had faced trial courts when trying to divide property within the parameters of the alimony statute. Effective January 1, 1991, the Ohio General Assembly amended R.C. 3105.18 and enacted R.C. 3105.171 to "modify the domestic relations law to provide for spousal support and the division of marital property and separate property, instead of for alimony[.]" Am.H.B. No. 514, 1990 Ohio Laws 276. Thus, alimony was no longer intertwined with the division of marital property and instead became distinct from property division.

{¶16} The newly-enacted R.C. 3105.171 was dedicated to the division of property and set forth specific factors that the trial court "shall" consider before dividing marital property and further required that the trial court issue written findings of fact to support its equitable division of marital property. R.C. 3105.171(F)-(G). The factors pertained to how to best divide certain types of property, including the costs of sale, tax consequences, liquidity of the assets, and

whether certain assets should remain intact because of income-producing potential or the desirability of one party remaining in the marital home.  R.C. 3105.171(F).

{¶17}  Notably, by separating property and support, the relative economic circumstances of the parties was removed from the property division equation.  Spousal support focused on the relative earning abilities and economic situation of the parties; property division did not.  *Id*.; R.C. 3105.18(C).  R.C. 3105.171 then and now provided that each party was considered to have contributed equally to the acquisition of property, that the property division should be "equal" or "equitable," and that property should be divided before any award of support and without regard to it.  *See* R.C. 3105.171(C)(1)-(3).  Although R.C. 3105.171 has been amended several times since 1991, the equitable factors pertaining to property division have remained essentially the same.

### Allocation of Marital Debt

{¶18}  Although R.C. 3105.171 does not explicitly address the division of marital debt, this Court as well as other Ohio courts has typically held that marital debt is subject to allocation as part of the property distribution and that debt allocation is guided by the same equitable factors contained in R.C. 3105.171.  *See, e.g., Hines v. Hines-Ramsier*, 9th Dist. Wayne No. 10CA0059, 2011-Ohio-6093, ¶ 5; *see also Arn v. Arn*, 9th Summit No. 21078, 2003-Ohio-3794, ¶ 18-19; *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 43; *Congrove v. Congrove*, 9th Dist. Summit No. 19890, 2000 WL 1349809, *2 (Sept. 20, 2000). When dividing property, R.C. 3105.171(F) requires the court to consider the following equitable factors:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶19} R.C. 3105.171 has never been amended to provide a definition of marital debt or to clarify the appropriate equitable factors to guide the trial court's discretion in allocating marital debts. Instead, the statutory scheme in Ohio, as in most other states has "focused on the judicial distribution of the assets owned by the divorcing couple and ignored the related topic of debts." Mahoney, 79 UMKC L. Rev. at 445. Although divorce courts in other states also look to their property division statutes to allocate marital assets and marital debts, Ohio's property division statute is somewhat unique insofar as its equitable factors are asset-based and, most significantly, do not include any factors that pertain to the relative economic circumstances of the parties. *See, e.g.*, Pa.Stat.Ann. Title 23, 3502(a)(10); Ill.Comp.Stat.Ann. Chapter 750, 5/503; Ind.Code Ann. 31-15-7-5(3); Iowa Code Ann. 598.21.

{¶20} Ohio's asset-based equitable factors may adequately guide the trial court's discretion when the marital debts are tied to or secured by specific assets and the total value of marital assets exceeds the total value of marital debts. In those situations, the trial court can

subtract the total marital debt from the total marital assets to arrive at a net value of "marital property" to be equitably divided between the parties. *See Arn*, 2003-Ohio-3794, at ¶ 19; *Tester v. Tester*, 2d Dist. Darke No. 1361 CA, 1995 WL 276768, *4-5 (May 10, 1995). Moreover, debts that encumber assets, such as home mortgages or car loans, can often be satisfied by selling the property that they encumber, if necessary.

{¶21} Factors based on dividing assets, however, do not provide sufficient guidance when marital debts are not secured by particular assets and, perhaps more obviously, when marital debts exceed marital assets. When the couple's debts exceed total assets, "the parties' disparate earnings remain the only source for retiring [the debt] and are appropriately considered in its allocation." American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations*, Section 4.09(h) (June 2013). An equitable allocation of a marital estate that consists solely of debt necessarily requires a consideration of the parties' relative economic circumstances, as the debt can only be repaid with a future stream of income, as there is no pool of assets to cover the debts. *See id.*

**Marital Debt Allocation in Practice**

{¶22} To the extent that the R.C. 3105.171(F) factors could be seen as addressing the allocation of marital liabilities, those factors seem to anticipate that marital liabilities can and should be paid from the pool of marital assets. *See, e.g.*, *Arn*, 2003-Ohio-3794, at ¶ 19. The allocation of marital debt, however, is often more complicated than simply subtracting the marital debt balance from the value of gross marital assets and dividing the net property between the parties. During the two decades since R.C. 3105.171 was enacted, there has been an explosive growth in unsecured debt, including student loans and credit card debt, which was not anticipated or addressed by the statute. *See generally* Dean, *Student Loans, Politics, and the*

*Occupy Movement: Financial Aid Rebellion and Reform*, 46 J. Marshall L.Rev. 105 (2012); Levitin, *Rate-Jacking: Risk-Based & Opportunistic Pricing in Credit Cards*, 2011 Utah L. Rev. 339, 345-46 (2011); Sipley, *For-Profit Education and Federal Funding: Bad Outcomes for Students and Taxpayers*, 64 Rutgers L.Rev. 267, 293 (2011).

{¶23} Because significant unsecured debts often must be paid from a future stream of income, rather than by liquidating marital property, courts will often consider the relative incomes and earning abilities of the parties, despite the absence of those factors from R.C. 3105.171(F). Thus, although Ohio courts often purport to apply the factors of R.C. 3105.171(F) to divide marital debt, because those factors fail to address the parties' ability to repay debts, courts often look beyond the specific factors set forth in the statute. *See, e.g., Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8-12 (allocating sole responsibility for one marital debt to the husband because he earned $100,000 annually while the wife had "virtually no earning ability[,]" he had incurred the debt without her consent, and the parties had very few assets); *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011–08–094, 2012-Ohio-4106, ¶ 34-35 (parties' disparate income levels considered in allocating most of the marital debt to the husband); *Samples v. Samples*, 4th Dist. Washington No. 02CA21, 2002-Ohio-5441, ¶ 22-25 (awarding vehicle to the wife but responsibility for the vehicle loan to the husband based on his higher earning ability).

### Student-Loan Debt and the "Benefit" Confusion

{¶24} Rightly or wrongly, the allocation of student-loan debt that one spouse incurred during the marriage is often treated differently from other marital debt because of the unique nature of that debt. *See generally* Turner, *Division of Student Loans in Divorce Cases*, 13 No. 3 Divorce Litig. 52 (2001); Mahoney, 79 UMKC L. Rev. at 460. Although student-loan debt is

similar to other unsecured debt, it is commonly understood to be associated with an intangible future benefit: the enhanced earning ability of the educated spouse. Mahoney, 79 UMKC L. Rev. at 460.

{¶25} If one spouse incurs student-loan debt to obtain a degree near the end of the marriage, allocation of that debt is often driven by the assumption that the recently-educated spouse is leaving the marriage with increased earning capacity that is not divisible or of no benefit to the other spouse. Alternatively, the spouse is viewed as having obtained an asset that is not divisible. *See id*. In fact, to address that concern, courts in some states have considered whether the advanced degree obtained by one spouse during the marriage should be treated as an asset that is subject to equitable division between the spouses. *See, e.g., O'Brien v. O'Brien*, 66 N.Y.2d 576 (1985) (concluding that husband's medical license was a marital asset subject to distribution); *but see Prenatt v. Stevens,* 598 N.E.2d 616, 620 (Ind.App.1992) (the financial value of a degree cannot be quantified because its value depends upon "choice and availability of work, whether the holder is good at what she does, or a myriad of other potentialities.").

{¶26} Lacking any specific guidance from R.C. 3105.171, Ohio case law that has addressed the division of marital student-loan debt has similarly focused on the notion that the educated spouse is taking an intangible benefit away from the other spouse and, for that reason, should bear sole responsibility for repaying the debt. The notion that the degree-earning spouse receives the sole benefit of the education is exemplified in a line of cases beginning with *Webb v. Webb*, 12th Dist. Butler No. CA97-09-167, 1998 WL 820838 (Nov. 30, 1998). In determining how to equitably divide the wife's student-loan debt, the court focused on the fact that the wife did not earn her degree until shortly after the parties separated and, consequently, concluded that the student-loan debt may be allocated solely to the spouse who incurred the debt and obtained

the degree. *Id.* at \*4. The court specifically reasoned that, because the wife would not realize her increased earning potential until after the marriage had ended, she was the only one who would "benefit" from her degree, so that "equity" required that she "bear the full responsibility for repaying her student loans." *Id.* at \*4. Several other courts have followed *Webb* or independently applied similar reasoning. Courts adopting this approach reason that student loans enabled the educated spouse to acquire an increased earning ability that does not benefit the other spouse, thus concluding that the student-loan debt should be allocated solely to that spouse. *See, e.g., Daniel v. Daniel*, 3d Dist. Mercer No. 10-11-09, 2012-Ohio-5129, ¶ 22; *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10 CA 22, 2010-Ohio-6593, ¶ 36; *Thill v. Thill,* 2d Dist. Clark No. 2001-CA-23, 2001 WL 929995, \*4-5 (Aug. 17, 2001).

{¶27} This Court is not persuaded by the benefit-based reasoning of these cases, as they place a one-sided focus on a presumed singular financial benefit to the educated spouse without considering any other relevant circumstances, such as the parties' relative educations or earning abilities, relative economic circumstances as well as other factors related to the attainment of the spouse's education, or the parties' respective roles during the marriage. With respect to division of property, the Ohio Supreme Court has consistently emphasized that the trial court must exercise its discretion by considering the unique facts and circumstances of each case because "it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce." *Cherry*, 66 Ohio St.2d at 355; *see also Koegel v. Koegel*, 69 Ohio St.2d 355, 356 (1982). Similarly, the division of student-loan debt based upon the flawed assumption that financial benefit inures solely to the educated spouse fails to account for the unique facts and circumstances of the case and seems to be closer to a flat rule that falls short of achieving an equitable result in all cases.

**{¶28}** The notion that the degree-earning spouse is the sole beneficiary of the earned degree, and hence should shoulder all of the student-loan debt, is inherently flawed. It is apparent that the Ohio legislature has never adopted a benefit approach when dividing property. R.C. 3105.171 includes no factors concerning the "benefit" that one spouse receives from marital property in ascertaining how to divide the asset. In fact, absent financial misconduct or secreting of assets, there is nothing in Ohio's existing statutory scheme to suggest that a direct benefit to one or both spouses, financial or otherwise, is an appropriate equitable factor to consider in dividing marital property or debt or in awarding spousal support. This policy makes sense as it is grounded in the fundamental characteristic of a marriage: a union which creates a marital estate and in which each spouse takes responsibility for both the benefits and burdens of the marital partnership. As such, both spouses are considered to have contributed equally to the acquisition of marital property, which includes most property acquired during the marriage. R.C. 3105.171(A)(3) and (C)(2). Many assets are purchased during a marriage that benefit one spouse more than the other, but the one-sided benefit of an asset does not affect its classification as "marital." "[A] particular asset acquired during marriage is not excluded from the pool of property subject to distribution simply because it was acquired by (even if tremendous personal effort was involved), belonged to, or was enjoyed by just one of the partners during marriage." Mahoney, 79 UMKC L. Rev. at 463-464. We see no reason to treat marital debts differently, absent evidence of financial misconduct or covert financial activity by one spouse. *See* R.C. 3105.171(E)(4) and (5).

**{¶29}** Moreover, the premise underlying *Webb*, namely, that the degree-earning spouse is the sole beneficiary of the earned degree is flawed as it is evident that if a spouse earns a degree, the other spouse (as well as the children) will benefit by virtue of that spouse's greater

earning power and economic independence. Thus, upon termination of the marriage, the other spouse may pay less spousal support and for a shorter duration as well as less child support. *See* R.C. 3105.18(C)(1); *see also In re Marriage of Spears*, 956 P.2d 622, 625 (Colo.App.1997).

{¶30} In addition, while many courts have allocated student-loan debt to the degree-earning spouse due to the fact that the education was obtained in close proximity to separation or divorce, the timing of obtaining the degree should not be determinative, given that, if a spouse postponed education during the marriage, as is often the case, and is required to gain skills after the divorce, it is likely that the non-skilled and non-educated spouse would be entitled to a greater amount and duration of spousal support in order to obtain the education or skills necessary to achieve economic independence. *See* R.C. 3105.18(C)(1). In addition, the degree-earning spouse has no control over whether or when the other spouse files for divorce. Thus, one spouse could have stayed home to raise the children and commenced obtaining an education while the other spouse initiating the divorce was the primary wage earner. Thus, the timing of obtaining the education or degree is intertwined with the ongoing choices of the spouses during the marriage. Similarly, had the spouses paid for tuition from marital funds, the degree-earning spouse would not be required to "repay" those funds upon divorce any more than either spouse would have to repay other funds expended during the ordinary course of the marriage. As such, it is inequitable to require the spouse earning a degree toward the end of the marriage to shoulder the entire burden of the debt simply because debt was incurred toward the end of the marriage.

### Equitable Considerations in Dividing Student-Loan Debt

{¶31} A primary consideration in the allocation of marital student-loan debt entails the evaluation of the relative economic circumstances of the parties. Because the repayment of unsecured marital debt will typically require a stream of future income, the parties' relative

abilities to repay the student-loan debt is an appropriate equitable factor to consider. It is well accepted in other jurisdictions that the parties' relative economic circumstances should be considered in dividing marital property and allocating marital debt. *See, e.g*., Minn.Stat.Ann. 518.58(1); Iowa Code Ann. 598.21(5); Fla.Stat.Ann. 61.075(1); N.C.Gen.Stat.Ann. 50-20(c). Although some statutes include the broad factor of the parties' "economic circumstances," as set forth in the Uniform Marriage and Divorce Act, others set forth more specific factors such as their employment incomes and earning abilities, including relative education, skill, experience, and employability; ages and physical and emotional health; income from other sources; and other economic factors. *See id*. Moreover, as explained above, in other marital debt allocation situations, this Court and others have looked to the parties' relative abilities to repay the debt. *See, e.g., Smith*, 2012-Ohio-1716, at ¶ 8-12.

{¶32} In addition to the economic circumstances of the parties, the trial court should consider any fact it expressly finds to be relevant and equitable. Many other states include a catchall factor. *See, e.g.,* Fla.Stat.Ann. 61.075(1)(j); N.C.Gen.Stat.Ann. 50-20(c)(12). Similarly, Ohio includes a catchall factor in the property division statute. *See* R.C. 3105.171(F)(10) (authorizing the trial court to consider "[a]ny other factor that the court expressly finds to be relevant and equitable."). Authorizing the trial court to consider "any other" factor embodies the notion that each case is decided upon its unique facts and that the trial court is in the best position to determine what facts are most relevant to its equitable determination. *See In re D.H.*, 8th Dist. Cuyahoga No 89219, 2007-Ohio-4069, ¶ 40.

{¶33} Accordingly, when equitably dividing marital student-loan debt, the trial court must examine all of the relevant circumstances of the parties including the parties' relative

economic circumstances and ability to pay the debt as well as any other factor the court finds to be relevant and equitable.

### Allocation by the Trial Court

{¶34} Unfortunately, the relevant surrounding circumstances of the parties in this case were not fully developed below. Husband and Wife had settled most issues before the hearing, including the division of their property, shared parenting of the children, child support, and that Wife would receive spousal support of $1,000 per month for one year. At the hearing on the allocation of the student-loan debt, the parties and the trial court focused on the benefit-based reasoning of Ohio appellate case law on this issue. Their evidence centered upon attempting to discern the disposition of the loan proceeds that had been deposited in the marital bank account from which Husband paid the bills. Wife testified that some of the student-loan proceeds were actually used to pay for vacations and other family expenses, in addition to Wife's nursing school. The trial court ultimately rejected Wife's testimony on that issue and concluded that Wife did not prove that any of the funds had been spent on vacations or other family-related expenses.

{¶35} Rather than considering all of the relevant circumstances of the parties, the court focused on the notion that Wife was leaving the marriage with a degree that would not financially benefit Husband because she obtained her degree at about the same time that the parties separated. For that reason, the trial court allocated all of the student-loan debt to Wife. However, as explained above, the trial court's reasoning underlying the exercise of its discretion was flawed, as Wife is not the sole beneficiary of her nursing degree. Moreover, although it was reasonable for the trial court to consider Wife's increased income after earning her nursing degree, as her income affected her ability to repay the student loans; her income should not have

been considered in isolation and to the exclusion of Husband's significant income. Although Wife had earned her nursing degree and achieved an increased earning ability by the time of the divorce, Husband's annual salary at that time was more than three times higher than hers. Other facts may affect the relative economic circumstances of the parties that are not apparent from the record, such as other sources of income, facts bearing on their ability to work, and the financial obligations of each. Because no evidence was presented to the trial court about the relative ability of each party to repay the $40,000 student-loan debt, the parties' relative economic circumstances, or other relevant evidence, and given that the trial court and parties did not have the benefit of the guidance from this Court's opinion, the matter is remanded for a new hearing.

{¶36} We also note that in its judgment, the trial court was clearly displeased with Wife's conduct vis-à-vis her boyfriend who began residing with her, along with his children. Although this Court does not condone Wife's conduct, the General Assembly has limited the factors a trial court may consider when dividing marital property. Thus, although the trial court has discretion to consider facts relevant and equitable to dividing marital debt, its discretion in this regard is not without limits and does not authorize the trial court to consider factors that are contrary to the intent of the legislature embodied in R.C. Chapter 3105. By enacting specific equitable factors as well as no-fault grounds for divorce and support, the general assembly attempted to constrain the trial court's discretion and removed nonfinancial fault from the property division and support equation. *See* Am.H.B. No. 232, 1974 Laws of Ohio 2-123 (enacting R.C. 3105.63, the dissolution statute); Am.H.B. No. 514, 1990 Laws of Ohio (enacting R.C. 3105.171 and amendments to R.C. 3105.18 and 3105.17). Aside from misconduct that has adverse financial consequences on the parties, there is nothing in Ohio's statutory scheme to suggest that non-financial misconduct such as extramarital relations may be considered in

dividing marital property or debt. *See* R.C. 3105.171(E)(4) and (5). Thus, just as extramarital relationships or "marital fault" generally play no role in allocating marital property, the same is true in allocating marital debt. In allocating the student-loan debt solely to Wife, the trial court emphasized the fact that Wife's boyfriend and his children moved into the marital residence shortly after Husband and Wife separated, suggesting that the debt allocation was influenced by that fact. Given the trial court's apparent disapproval of Wife's conduct, it is unclear whether it allocated the debt as a punitive measure rather than based upon relevant equitable considerations relating to Wife's boyfriend.[1]

{¶37} Because the trial court failed to consider the parties' relative economic circumstances and other relevant factors to determine how to equitably allocate the student-loan debt, the matter is remanded for a new hearing on that issue. Wife's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY ISSUING AN EX PARTE PARENTING ORDER DATED JUNE 20, 2012 WITHOUT THE EXISTENCE OF EXIGENT AND EMERGENCY CIRCUMSTANCES AND WITHOUT PROVIDING NOTICE AND DE NOVO HEARING AFTER THE ENTRY OF THE EX PARTE PARENTING ORDER AS REQUIRED BY LOCAL RULE 2.10(B).

{¶38} Wife's second assignment of error challenges an order issued by the trial court on June 20, 2012, which provided that Husband could take the children on vacation in ten days and that Wife was prohibited from interfering. Specifically, she challenges the fact that the trial court issued the order on an ex parte basis without giving her prior notice or an opportunity to be

---

[1] For example, the degree-earning spouse's significant other could be independently wealthy and volunteer to undertake payment of the debt.

heard on the issue. She maintains that the trial court failed to follow the procedure required by its local rules.

**{¶39}** Wife does not dispute that this issue had become moot because the vacation has already occurred and there is no relief this Court can grant to correct that alleged error. *See Szymczak v. Tanner,* 9th Dist. Medina No. 10CA0101-M, 2012-Ohio-540, ¶ 8. She argues, however, that an exception to the mootness doctrine applies here because the issue is "capable of repetition yet evading review." *See Adkins v. McFaul*, 76 Ohio St.3d 350, 350 (1996). Although there is an exception to mootness doctrine if the underlying issue is capable of repetition yet evading review," it is fundamental that the issue be one of law, not facts. *In re Suspension of Huffer from Circleville High School*, 47 Ohio St.3d 12, 14 (1989); *State ex rel. Plain Dealer Pub. Co. v. Barnes*, 38 Ohio St.3d 165 (1988), paragraphs one through three of the syllabus.

**{¶40}** Wife has failed to raise a legal question but instead argues that, in three different situations during this case, the trial court issued an ex parte order that was not warranted by the facts before it. Because this Court cannot grant her relief and she has failed to raise a legal question that is capable of repetition, this Court need not reach the merits of Wife's second assignment of error.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT MANDATORILY APPLYING [R.C. 3119.04(B)] TO AWARD TEMPORARY CHILD SUPPORT TO APPELLANT WITH AN UPWARD DEVIATION FROM THE GUIDELINES TO COVER ALL OF THE PRIVATE SCHOOL TUITION OF THE MINOR CHILDREN BECAUSE THE COMBINED GROSS INCOME OF THE APPELLEE AND APPELLANT WAS IN EXCESS OF $150,000.00.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO ORDER APPELLEE TO PAY ALL THE COST OF PRIVATE SCHOOL TUITION OF THE MINOR CHILDREN DURING THE PENDENCY OF THE

DIVORCE CASE AND DEVIATE UPWARD FROM THE AMOUNT OF THE GUIDELINE CHILD SUPPORT PURSUANT TO [R.C. 3119.22] BASED UPON DISPARITY OF INCOME AND THE EDUCATIONAL NEEDS, CAPACITY, AND OPPORTUNITIES OF THE MINOR CHILDREN.

**{¶41}** This Court will address Wife's third and fourth assignments of error together because they are closely related. Through each assigned error, she argues that the trial court erred in its calculation of the amount of child support that Husband was ordered to pay during the pendency of the divorce action. Specifically, she asserts that Husband should have been ordered to pay all of the children's private school tuition during the pendency of this action. Wife does not take issue with the final decree as it pertains to child support or allocation of responsibility for the children's private school tuition; she challenges only the temporary order.

**{¶42}** Although Wife cites several cases to support her underlying argument about how child support should have been calculated in this case, each of those cases involved a challenge to a final child support order. *See, e.g.*, *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 24 (9th Dist.). The temporary child support order at issue here, however, was "provisional in nature, subject to modification at any time[.]" *Kelm v. Kelm*, 93 Ohio App.3d 686, 689 (10th Dist.1994), citing *McMahon v. McMahon*, 156 Ohio St. 280, 281 (1951). Unless a temporary support order is "reduced to a separate judgment or * * * considered by the trial court and specifically referred to within the decree[,]" it is merged within the final decree. *Colom v. Colom*, 58 Ohio St.2d 245 (1979), paragraph one of the syllabus.

**{¶43}** At the time the parties appeared before the trial court on April 26, 2012, they represented on the record that they had reached an agreement on most issues, including child support. In its May 2, 2012 findings and order after a hearing on the contested issues, the trial court journalized that the parties had entered into stipulations on all financial issues except the allocation of the student-loan debt. In the final divorce decree entered on June 26, 2012, the

trial court again noted that the parties were in agreement on most issues, which included child support and allocation of responsibility for the children's private school tuition.

**{¶44}** There was no separate judgment pertaining to the temporary child support order, and the only reference to it in the final decree is in paragraph 27, which provides:

> There are no arrearages owed [Wife] by [Husband] in temporary child support * * * under the Temporary Order[] of October 28, 2011 and all provisions concerning arrearages of child support * * * under the Temporary Order are merged into this decree and of no effect.  CSEA is to so indicate on its records.

Because the temporary child support order was merged into the final decree, Wife cannot challenge it now on appeal.  Therefore, we do not address the merits of her third and fourth assignments of error.

### III.

**{¶45}** Wife's second, third, and fourth assignments of error were not addressed on the merits.  Her first assignment of error is sustained.  The judgment is reversed and remanded only insofar as it pertains to the allocation of the marital student-loan debt.  The remainder of the trial court's judgment is affirmed.

Judgment affirmed in part,
reversed in part, and
the cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
CONCURS.

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶46} I write separately to explain why I believe this case must be remanded regarding the allocation of Wife's student-loan debt yet cannot join in the lead opinion. In this case, the Wife is arguing that she should not be responsible for the loan debt because the proceeds were spent on the family and not solely on her education. The trial court specifically found that, under the circumstances, Husband will not receive any benefit from Wife's degree.

{¶47} I do not find that an analysis of the benefits that accrue to the parties when one of them earns a degree are necessary in this case because Wife did not challenge the court's finding in her brief. According to Wife, the reason that it was inequitable for the trial court to allocate all of the student-loan debt to her is simply because she, allegedly, spent some of the money on family vacations and common household expenses. The trial court found her testimony incredible, however, and, hence, gave it no weight. Upon review of the record, Wife has failed

to establish that the trial court's finding that no part of the debt was used to pay shared expenses is against the manifest weight of the evidence.

{¶48} Although Husband may not have received any benefit from Wife's student loans, that is only one of the factors that the trial court was required to consider before dividing the debt. R.C. 3105.171(F). The trial court's discussion of the use of the loan proceeds was one couched in terms of "benefit" to the parties, but an inquiry into what is equitable does not end with an analysis of the benefit derived from the debt. The equity of assigning debt that was incurred during a marriage should also include an inquiry into the parties' relative ability to pay the debt. *See Handlovic v. Handlovic*, 5th Dist. Ashland No. 99-C0A-01310, 2000 WL 1335072, *3 (Sept. 11, 2000). Consideration of that issue necessarily takes into account the parties' monthly obligations as well as their income.

{¶49} Because the parties stipulated to the division of assets, other debts, and the amount of child and spousal support, they did not present much evidence regarding their financial circumstances. There was some evidence in the record, however, regarding those issues. In its decision, the trial court wrote that, "[g]iven the parties' separation in the month that Wife received her degree and her subsequent cohabitation," Wife should be solely responsible for her school loans. Given the tenor of the and focus of the proceedings below, it is unclear whether the court considered the parties' income, their ability to repay the loan, or the equity of assigning the loan debt solely to Wife, relative to how other assets and debts were allocated. Therefore, I agree that this case must be remanded.

APPEARANCES:

ERIC E. SKIDMORE, Attorney at Law, for Appellant.

LESLIE GRASKE, Attorney at Law, for Appellee.