[Cite as *Cross v. Cross*, 2015-Ohio-5255.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 102627

## JOHANNAH W. CROSS

PLAINTIFF-APPELLANT

vs.

## DOUGLAS W. CROSS

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-13-347523

**BEFORE:** Stewart, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 17, 2015

**ATTORNEY FOR APPELLANT**

Robert E. Epstein
2421 Allen Blvd.
Beachwood, OH 44122

**ATTORNEYS FOR APPELLEE**

Sarah Gabinet
Justine L. Konicki
Kohrman, Jackson & Krantz, P.L.L.
One Cleveland Center, 20th Floor
1375 East Ninth St.
Cleveland, OH 44114

**Guardian Ad Litem**

Adam J. Thurman
Schoonover, Rosenthal, Thurman & Daray, L.L.C.
1001 Lakeside Ave., Suite 1720
Cleveland, OH 44114

MELODY J. STEWART, P.J.:

{¶1} This is an appeal from a divorce decree that terminated the nearly 27-year marriage of plaintiff-appellant Johannah Cross and defendant-appellee Douglas Cross. The 12 assignments of error[1] collectively contest the division of marital property, allocation of marital debt, spousal support, child support, and guardian ad litem fees. We find no error and affirm.

## I. Spousal Support

{¶2} The court ordered Douglas to pay spousal support to Johannah in the amount of $1,250 per month for 96 months. In her first assignment of error, Johannah complains that the court abused its discretion in both the amount and duration of spousal support. She argues that the court erred when calculating the parties' income because it failed to account for the disparity in income and earning ability between the parties.

{¶3} R.C. 3105.18 allows the court to award spousal support provided it is "appropriate and reasonable." When deciding whether spousal support is appropriate and reasonable, the court must consider the factors set forth in R.C. 3105.18(C)(1). There is no "mathematical formula" for determining what amount of spousal support should be ordered, *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988), so the court has broad discretion to determine the amount and the duration. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). If some competent, credible

---

[1] To facilitate our disposition of the assignments of error, we address them out of turn.

evidence supports the court's order, that order will not be an abuse of the court's discretion. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998).

{¶4} The matter was tried to the court, which entered findings relative to spousal support based on the factors in R.C. 3105.18. At the time of divorce, Douglas was 55 years old, had a college degree, and earned $172,900 as a sales manager for a media company. Johannah was 47 years old, had bachelor's and master's degrees (both earned during the marriage), and earned $55,308 as a teacher and an additional $9,064 as a tutor. The court found that the parties enjoyed an "upper middle class" standard of living and that neither party's earning ability would suffer in the future.

{¶5} Johannah first maintains that the court erred in calculating Douglas's income because it failed to take into account bonuses. She claims that the evidence showed that Douglas received bonuses of up to $68,000 in the years prior to the divorce and that the court should have factored these bonuses into its calculation of Douglas's income.

{¶6} The evidence showed that Douglas's bonuses were sporadic because they were based on his company's yearly performance. In the nine years leading up to the divorce decree, Douglas received four bonuses ranging from $29,736 to $68,000.

{¶7} For purposes of determining spousal support, R.C. 3105.18(C)(1)(a) orders the court to consider "[t]he income of the parties, from all sources * * *." We have held that R.C. 3105.18(C)(1)(a) is substantively different than R.C. 3119.05(D), which states that for purposes of determining *child support* the court must include income from bonuses. Thus, the court does not abuse its discretion simply by refusing to include

bonuses in its calculation of income for purposes of spousal support.  *MacDonald v. MacDonald*, 8th Dist. Cuyahoga No. 96099, 2011-Ohio-5389, ¶ 32.

**{¶8}** The court did not specifically mention these bonuses in its calculation, but it did order that Johannah receive 50 percent of the net after-tax amount of any bonus that Douglas might receive in 2015 for tax year 2014.  Given the irregularity with which Douglas received any bonuses and the variability of the amounts of the bonuses, the court decided to treat any potential bonus not as income, but as a marital asset instead of income.  This was consistent with how the parties treated past bonuses (a point of contention we will consider in greater depth later).  For purposes of Johannah's argument here, we cannot conclude that the court abused its discretion by refusing to average out Douglas's prior bonuses and consider them income.

**{¶9}** In addition to Johannah's salary as a teacher, she earned $9,064 in 2013 as a tutor.  Johannah testified that she did not expect to earn as much by tutoring in the future, so the court abused its discretion by including that amount as part of her gross income. We disagree.  While Douglas had no control over his bonus — it was awarded at the discretion of his employer and was not based on personal performance — Johannah had much more control over her tutoring income.  She said that, moving forward she "expects" to earn less money tutoring, but did not explain why this was so.  With the absence of any testimony showing a reasonable basis for a reduction in her tutoring income, the court did not abuse its discretion by imputing that income to her.

{¶10} Johannah next argues that the court abused its discretion by awarding her only $1,250 per month for spousal support for 96 months.  She maintains that this figure is "unreasonably low" given the disparity in income and earning ability between the parties and that the length of support ordered is inconsistent with a marriage that lasted nearly 27 years.

{¶11} "R.C. 3105.18 does not require a spousal support award to provide the parties with an equal standard of living."  *Saks v. Riga*, 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, ¶ 77.  Rather, an award of spousal support must be designed to allow a party to maintain "a reasonable standard of living in light of the standard maintained during the marriage."  *Howell v. Howell*, 2d Dist. Clark No. 2002 CA 60, 2003-Ohio-4842, ¶ 25.

{¶12}  The court determined that Johannah could earn approximately $64,000 per year by teaching and tutoring.  When spousal support of $15,000 ($1,250 x 12 months) is added to that amount, Johannah will have income of nearly $80,000 (exclusive of any child support she receives).  While this amount may not allow Johannah to enjoy the "upper middle class standard of living" she enjoyed during the marriage, it must be noted that the parties achieved that standard of living by accruing a significant amount of debt.  Johannah could not expect the court to continue the cycle of debt in order to sustain a prior standard of living.

{¶13} Johannah's argument that the 96-month duration of spousal support is too short rests solely on the length of the marriage.  While the duration of the marriage was a

factor that could weigh in favor of a longer period of spousal support, the court may have considered as a countervailing factor that Johannah had, by the time of the divorce, firmly established a career as a teacher. Johannah could independently support herself, so the court could rationally conclude that the length of spousal support was reasonable and appropriate under the circumstances.

{¶14} In addition, the court was aware that Douglas was eight years older than Johannah and that the 96-month period of spousal support would be terminated when Douglas reached 64 years of age, or the threshold of retirement. *Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶ 24. In addition, Johannah makes no argument that she will suffer substantial financial hardship upon the termination of spousal support. We cannot say that the court abused its discretion by limiting spousal support to 96 months.

## II. Division of Marital Assets

{¶15} In her second assignment of error, Johannah complains that the court erred by refusing to find that Douglas engaged in financial misconduct by misappropriating marital funds to support the activities of the parties' children. She argues that as a consequence of this misconduct, the court should have ordered a distributive award of marital property to her.

{¶16} The law requires an equal division of marital assets. *See* R.C. 3105.171(C); *see also Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). There may

be cases, however, where an equal division of marital property would be inequitable. One such case exists when

> [A] spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

R.C. 3105.171(E)(4). We have said that "financial misconduct" exists if a spouse engages in "wrongdoing" or "profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets." *Bostick v. Bostick*, 8th Dist. Cuyahoga No. 90711, 2008-Ohio-5119, ¶ 23. The complaining spouse has the burden of establishing financial misconduct. *Hammond v. Brown*, 8th Dist. Cuyahoga No. 67268, 1995 Ohio App. LEXIS 3975 (Sept. 14, 1995).

{¶17} Johannah argued that Douglas engaged in financial misconduct by using bonuses he received from his employer to support a go-kart racing hobby that Douglas enjoyed along with the parties' two children and not for any agreed upon marital purpose. While the court did find that Douglas so used the bonus money, the court pointedly found that Douglas "did not personally profit from these funds," but instead used them to support "his children and their extracurricular activities." That finding was not an abuse of the court's discretion.

{¶18} This brings us to a broader point raised by Johannah: that Douglas may have mismanaged marital finances by being overindulgent with the children. Financial misconduct that dissipates or destroys marital assets can be a basis for the court to make a distributive award of marital property. *See* R.C. 3105.171(E)(3). But *mismanagement*

of marital assets is not the same as financial misconduct. In *Hammond*, we made it clear that "financial misconduct" required a showing of "wrongdoing"; for example, where one party intentionally diminishes the value of another party's share of the marital estate. *Id*. at *11. Douglas may have been spendthrift, but he did not personally profit from his support of the children's racing hobby in a way that would justify a distributive award by the court.

{¶19} In addition, the court rejected Johannah's contention that Douglas was personally using the bonus money because he intentionally concealed it from her. The court found it unlikely that Johannah had no idea that Douglas was receiving the bonus money, noting that all of Douglas's bonuses were properly reported for income tax purposes on forms that Johannah signed. Certainly, Johannah knew about the racing hobby and, given the perilous state of the parties' finances, could not credibly maintain that she was unaware that marital funds supported that hobby. The court's finding to that effect was not an abuse of discretion.

{¶20} The third assignment of error is that the court abused its discretion by finding that Johannah was not entitled to at least one-half of Douglas's 2013 bonus. She argues that Douglas received his 2013 bonus in 2014, after this divorce action had been filed, and that he used this marital asset to pay off personal taxes and a private loan from a friend, and not for any marital purpose.

{¶21} Douglas testified that he used the proceeds from the bonus to pay a higher than expected income tax liability occasioned by Johannah's decision to file her tax return

as married, but filing separately. The court found this testimony credible given that Johannah eschewed the services of the certified accountant who had historically prepared joint tax returns for the parties and instead hired her own tax preparer. The newly hired tax preparer testified that Johannah listed all three children as dependents. The court found that there was no discussion between Johannah and her tax preparer "regarding the ramifications of filing individually versus jointly." For her part, Johannah testified that she was aware that Douglas wanted to file a joint income tax return for 2013, but refused to do so based on her fear of financial misconduct. The effect of Johannah's decision to file a separate tax return was that it exposed the parties to greater tax liability. The court recognized the additional liability as a marital debt, held Johannah accountable for "the consequences of her choice to file a separate/married income tax refund," and fairly distributed that debt between the parties by means of the 2013 bonus payment. This was a reasonable way of making Johannah responsible for her decision to file her taxes separately.

{¶22} In her seventh assigned error, Johannah complains that the court abused its discretion by not equally dividing between the parties the cash surrender value of two whole life insurance policies issued to Douglas.

{¶23} The insurance policies at issue have combined cash surrender values of approximately $9,500. The court ordered Douglas to pay all monthly premiums and name the parties' youngest child as the beneficiary of both policies until she reaches the

age of majority. Johannah maintains that these policies were marital assets that should have been equally divided between the parties.

{¶24} At the outset, we reject Douglas's contention that the court did not abuse its discretion because it ordered that Johannah keep her own life insurance policy free and clear of any claim that he may have. The court found that Johannah's life insurance was a "group life" policy through her employer. Group life insurance is significantly different from whole life insurance: group life insurance is a form of insurance under a contract between an insurance company and an employer, the term is clearly defined (usually the term of an employment), and apart from the stated death benefit, it has no cash value; whole life insurance is owned by the insured, has no stated term apart from the "life" of the policyholder, and a portion of the premiums paid accumulates as a "cash value" that can be borrowed against. The whole life insurance in Douglas's name had a cash value that could be accessed while Johannah's insurance policy did not. The insurance policies covering the parties were not equivalent.

{¶25} Nevertheless, we find no abuse of discretion because the court ordered that Douglas maintain the insurance policies for the benefit of the parties' youngest daughter, who was only 13 years of age at the time the court issued the divorce decree. While it is true that the cash surrender value of the policies was a marital asset, the court order that Douglas maintain the policies for the benefit of the youngest child converted that marital asset into a benefit for the child. Douglas cannot realize the cash value of those policies for at least four years, assuming that the policies are not paid out before that time. What

is more, by ordering Douglas to continue to pay the premium on those policies, any increase in the cash surrender value of the policies will be nonmarital because an increase will be solely the result of Douglas's post-divorce payments.

### III. Division of Marital Debt

{¶26} The fourth assignment of error relates to a temporary support order that required Douglas to pay certain notes that were secured by first and second mortgages on the family house, as well as property taxes and insurance on the house. Johannah filed a motion to have Douglas show cause as to why he should not be held in contempt for failing to make the payments, an omission that caused the holders of the notes to file foreclosure actions. The court denied the motion, finding that "while Defendant did not pay all of the direct payments as he was ordered to pay pursuant to this Court's temporary support orders, the Court finds Defendant did not have the ability to pay."

{¶27} "It has long been held that in a contempt proceeding, inability to pay is a defense and the burden of proving the inability is on the party subject to the contempt order." *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 20, citing *State ex rel. Cook v. Cook*, 66 Ohio St. 566, 570, 64 N.E. 567 (1902). Johannah argues that the court abused its discretion by finding that Douglas was unable to make the payments on the notes because Douglas chose to pay off credit card debt to the exclusion of the payments on the notes. Even if true, Johannah's argument ignores other findings by the court that the lack of funds to pay the notes was due in part to Johannah's transferring funds from the parties' joint checking account into her personal account

shortly before filing the divorce complaint and by cashing three paychecks shortly after the case had been filed. In other words, there was a basis for finding that both parties were responsible for the house going into foreclosure.

**{¶28}** The court implicitly acknowledged certain inequities by making Douglas accountable to pay the first $5,000 of any deficiency after the sale of the house, after which the parties would equally share any additional deficiency. A trial court "must have discretion to do what is equitable upon the facts and circumstances of each divorce case." *Deacon v. Deacon*, 8th Dist. Cuyahoga No. 91609, 2009-Ohio-2491, ¶ 13, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). The court found a reasonable way of dealing with Douglas's failure to make the payments on the notes, so we find no abuse of the court's discretion.

**{¶29}** The fifth assignment of error challenges the court's finding that credit card debt accrued solely in Johannah's name was her responsibility. Johannah argues that this debt accrued after she filed for divorce and that the credit card was used for household expenses, so the debt should have been considered marital that the parties would equally share.

**{¶30}** Although R.C. 3105.171 speaks only to the division of marital assets, courts have concluded that the statute also applies to the division of marital debt. *Polacheck v. Polacheck,* 2013-Ohio-5788, 5 N.E.3d 1088, ¶ 18 (9th Dist.); *Graves v. Graves*, 4th Dist. Vinton No. 14CA694, 2014-Ohio-5812, ¶ 15. This is because it is meaningless to speak only of marital assets — total equity is a function of assets and liabilities. To the extent

the parties to a divorce action carry any debt, an equal division of marital assets cannot be made unless there is an equal division of marital debt, too. *Ornelas v. Ornelas*, 2012-Ohio-4106, 978 N.E.2d 946, ¶ 32 (12th Dist.). "Marital debt" is "debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001CO60, 2003-Ohio-2559, ¶ 47, citing Turner, *Equitable Division of Property,* Section 6.29, 455 (2d Ed.1994, Supp. 2002). Debt that is not for the joint benefit of the parties is considered nonmarital and "equity generally requires that the burden of nonmarital debts be placed upon the party responsible for them." *Minges v. Minges*, 12th Dist. Butler No. CA87-06-085, 1988 Ohio App. LEXIS 660 (Feb. 29, 1988).

{¶31} The court found that each party "maintained credit cards separately from the other and used the cards without the other party's consent and knowledge." It further found that Johannah held nine credit cards in her name and that Douglas testified that he was "unaware of the majority of the credit cards and never had any access to said cards." The court ordered that both parties be solely responsible for credit card debt held in their name only.

{¶32} Johannah disputes the court's finding that she be responsible for the credit card debt accrued in her name. She argues that Douglas was aware of her credit cards, pointing to testimony where Douglas stated that he borrowed money against his 401(k) retirement plan to pay off the credit cards. This assertion is not entirely accurate. The cited testimony was that Douglas borrowed money to pay down an American Express

credit card — a credit card that the court found was listed in Douglas's name only. The court specifically found Douglas to be more credible on this issue, and nothing in the testimony cited by Johannah gives us any reason to conclude that the court's finding is against the manifest weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

**{¶33}** The sixth assignment of error is that the court erred by allocating the principal of a student loan for the parties' oldest, emancipated child, 70 percent to Douglas and 30 percent to Johannah. She argues that she did not co-sign the notes for the loans (Douglas and her father did) and lacked the financial means to assume any portion of that debt.

**{¶34}** The court relied on *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229 (8th Dist.), to find that the student loans in this case were marital debt and should be divided equitably. In *Kehoe*, we acknowledged that parents are not obligated to support their emancipated children, but held that when loans were incurred during the marriage to finance a child's education, the loans should be treated as any other expenditure of the marriage and considered a marital debt. *Id*. at ¶ 16.

**{¶35}** Johannah argues that *Kehoe* is distinguishable because the note in that case had been signed by both parties. Appellant's brief at 20. *Kehoe* says nothing about both parties signing the notes for the student loans, and even if it had, that fact would make no difference in this case. The loans were taken out during the marriage and were presumed to be marital debt. *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395,

¶ 11. Johannah does not argue that Douglas cosigned the student loans over her objection or that he acted unilaterally by securing the loans, so she failed to prove that the student loan indebtness was not a marital debt.

{¶36} The eighth assignment of error complains that the court abused its discretion by not reimbursing Johannah for "at least" one-half of the $3,125.85 in costs she incurred to remedy numerous violations discovered during a point-of-sale inspection conducted by the municipality where the parties lived.

{¶37} Douglas vacated the family home after Johannah filed for divorce, yet volunteered to make the necessary repairs to the house. Johannah refused to allow him in the house, claiming she feared for her personal safety because Douglas had in the past been physically and verbally abusive to her. She made the decision to bar Douglas from the house despite being aware that he had the knowledge and ability to effect the repairs himself.

{¶38} The court found that Johannah "is not entitled to reimbursement for the repairs made to the home, as she has had the sole benefit of residing in the home since December 1, 2013" and that she "refused to allow [Douglas] into the home to make the necessary repairs." That finding was not so unreasonable as to constitute an abuse of discretion. The court appeared to question Johannah's credibility on this issue of the point of sale violations, noting that she initially claimed that the repairs cost $6,989.13, but then testified that the repairs really cost "approximately $3,125.00 including a $1,000 insurance deductible." This lack of credibility likely affected Johannah's claim that she

feared Douglas. That fear seemed particularly unreasonable given that Douglas offered to have one of their sons accompany him and assist in remedying the point of sale violations. The court's findings make it plain that it thought that Johannah willingly chose to incur unnecessary expenses rather than economize. The court could rationally find that Johannah acted unreasonably and should be solely responsible to pay the cost of remedying the violations.

{¶39} The court appointed a guardian ad litem to represent the interests of the two minor children. The guardian ad litem's fees totaled $6,754.97. The court made the parties "equally liable" for the fees. Johannah's ninth assignment of error complains that making her equally liable for the fees was an abuse of discretion because Douglas "is in a far better position financially to pay the guardian ad litem fees."

{¶40} The preceding sentence states Johannah's entire argument: that she should not have to pay one-half of the guardian fees because Douglas earns more money than she earns. This argument does not comply with App.R. 16(A)(7). That rule requires that each assignment of error be separately argued and supported with citation to the facts and legal authority. We have "repeatedly rejected" arguments like this that merely incorporate arguments made in other assignments of error. *State v. Milligan*, 8th Dist. Cuyahoga No. 98140, 2012-Ohio-5736, ¶ 6. On this basis, we summarily overrule this assignment of error.[2]

---

[2] Even had Johannah separately argued the issue of the guardian ad litem fees, the record does not suggest that the court abused its discretion by ordering her to pay an equal share of the fees.

**{¶41}** The eleventh assignment of error concerns 1,000 shares of stock that Douglas's employer, a privately held company, granted to him. These shares would have monetary value only if the employer opened its stock to public trading. Douglas owned these shares for at least 14 years and said he was unaware of any plans for his employer to become a publicly-traded company. The court found that because the shares are restricted, they have "no current value." On that basis, the court awarded those shares of stock to Douglas. The eleventh assignment of error complains that the court should have divided the assets equally between the parties.

**{¶42}** Johannah's entire "argument" for this assignment of error is: "The 1,000 shares of * * * stock is a marital asset. Pursuant to R.C. 3105.171(B), the trial court erred in not dividing this asset equally between the parties." This is not an argument, but a conclusion, and does not comply with App.R. 16(A)(7). *See State v. Schwarzman*, 8th Dist. Cuyahoga No. 100337, 2014-Ohio-2393, ¶ 50. We summarily overrule this assigned error.

**{¶43}** As part of its division of marital assets, the court awarded Johannah one-half of the net after-tax amount of any bonus Douglas might receive in 2015 for the year ending 2014. In her twelfth assignment of error, Johannah complains that she should receive, as a division of marital assets, a one-half share of any bonuses Douglas might receive in subsequent years.

**{¶44}** The court issued the divorce decree in January 2015. To the extent that Douglas might receive an employee bonus for the year 2014, that bonus would be a

marital asset because it was awarded while the parties were married. *See Kaechele*, 35 Ohio St.3d at 97, 518 N.E.2d 1197, fn. 2. Employment bonuses that might be awarded to Douglas in the future would not be marital property because they would not be awarded during the marriage. *See, e.g.*, *Buckles v. Buckles*, 46 Ohio App.3d 102, 546 N.E.2d 950 (10th Dist.1988) (a future interest in an inheritance is not an asset to be divided either at the time of the divorce or in the future).

## IV. Child Support

{¶45} The tenth assignment of error complains that the court abused its discretion by awarding Johannah only $592.50 per month in child support for the youngest child, who would reside primarily with Johannah.

{¶46} In most cases, the amount of child support is set by reference to the child support guidelines and the computation worksheet, with the amount given being "rebuttably presumed to be the correct amount of child support, although the court may deviate from that amount." *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 49, citing R.C. 3119.03. But if, as in this case, the combined income of the parties exceeds $150,000, R.C. 3119.04(B) requires the court to determine the amount of child support on a "case-by-case" basis, taking into account the "needs and the standard of living of the children who are the subject of the child support order and of the parents." Importantly, R.C. 3119.04(B) "neither contains nor references any factors to guide the court's determination in setting the amount of child support," *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 31, so the determination of

how much child support an obligor must pay is left "entirely to the court's discretion." *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54.

**{¶47}** Appended to the divorce decree was a child support computation worksheet that calculated child support for the daughter, when health insurance is provided, in the amount of $592.50. Because the parties combined income exceeded $150,000, the court could not (with limited exceptions) set child support *below* $592.50. *See* R.C. 3119.04(B) ("The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars[.]") But this does not mean that the court, in its discretion, could not use that same figure to set child support.

**{¶48}** Johannah argues that the parties established a standard of living for the daughter, but that she could not continue to provide this standard of living on the amount of child support ordered by the court. As we earlier noted, the parties had a standard of living that caused them to accrue a large debt. In fact, Johannah points out that Douglas testified that he was overly-indulgent with the children and supported them in any interest that they had. Appellant's brief at 24. If this over-indulgence was a major cause of the parties' financial difficulties, it would have been unreasonable for the court to perpetuate it. We find no abuse of discretion in the amount of child support ordered.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the domestic relations division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR