[Cite as *Yousef v. Iskander*, 2022-Ohio-3126.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| HANI YOUSEF | C.A. No. 30216 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARIAN ISKANDER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. DR-2018-03-0609 |

DECISION AND JOURNAL ENTRY

Dated: September 7, 2022

CALLAHAN, Judge.

{¶1} Appellant, Hani Yousef, appeals a judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court reverses.

I.

{¶2} Mr. Yousef ("Husband") and Marian Iskander ("Wife") married in 2010 in Cairo, Egypt. They are the parents of three minor children. Husband practiced medicine as a cardiologist before emigrating to the United States in 1999. Wife was a pharmacist. Husband's medical degree did not transfer for purposes of licensure in the United States, so between 1999 and 2015, he worked in a number of different fields. In 2015, Husband enrolled in medical school in New York City, although Wife and their children continued to reside in Ohio, where she was then working as a pharmacist. During the years of his medical school training, Husband took out student loans to fund his tuition and educational expenses as well as the living expenses he incurred as a result of attending school in New York City and maintaining a separate residence there.

**{¶3}** Husband filed a complaint for divorce on March 7, 2018, while he was still enrolled in medical school. He incurred additional student loans while the divorce was pending. In total, Husband incurred $419,529.00 in student loans plus accrued interest that result in a loan balance of $464,381.25. During the trial of the divorce case, the parties entered into a shared parenting plan, leaving only financial issues in dispute. On March 3, 2020, the trial court entered a judgment entry and decree of divorce, concluding that with respect to the student loans incurred in 2018 and 2019, the debt constituted Husband's separate property. With respect to the remaining student loans, the trial court determined that the entire remaining balance of Husband's student loans, representing debts incurred in 2015, 2016, and 2017 for tuition and educational expenses and for living expenses, was also his separate property, reasoning that "[i]f one party solely takes on a debt, and the other party is not permitted to be a part of the decision-making process, then the other party should not be held liable for that debt." The trial court also reasoned that Wife did not understand the process of obtaining and using student loans in the United States and, consequently, that "[Husband's] actions border[ed] on covert financial activity[.]"

**{¶4}** Husband appealed, and this Court reversed the trial court's judgment with respect to the student loans incurred in 2015, 2016, and 2017. *See generally Yousef v. Iskander*, 9th Dist. Summit No. 29703, 2021-Ohio-3322. This Court noted that although the trial court defined "marital debt" correctly, "it did not utilize this definition in its analysis to determine whether the student loan debt in question was marital or separate debt." *Id*. at ¶ 7. Instead, as this Court observed, the trial court analyzed the equitable division of the debt without making this threshold determination. *Id*. Consequently, we remanded the matter for a determination of whether the student loans were marital or separate debt. *Id.* at ¶ 8.

{¶5} On remand, the trial court concluded that the student loan debt allocated to Husband's tuition and educational expenses in 2015, 2016, and 2017 was Husband's separate debt, but that the amount allocated to Husband's living expenses was marital debt. The trial court further determined that "it [] would be inequitable to impose the burden of [Husband's] student loan debt incurred in 2015, 2016, and 2017 for [Husband's] living expenses * * * on [Wife]." With respect to the student loan debt incurred for Husband's tuition and educational expenses, the trial court concluded that even if that debt should have been classified as marital, "the principles of equity likewise required that debt to be allocated to [Husband] in its entirety." In so doing, the trial court reasoned that "[Husband] did not offer any evidence to show he used his student loan funds on anything other [than] education[-]related expenses, tuition, and his New York living expenses." The trial court also ordered Husband to pay child support in the amount of $1,450.16 per month plus cash medical support, retroactive to August 1, 2019, and to pay $148.17 monthly toward arrears. Although Husband requested spousal support, the trial court determined that an award of spousal support would be inequitable given that Husband "is expected to see a dramatic increase in income."

{¶6} Husband appealed, raising four assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED IN DETERMINING HUSBAND'S STUDENT
LOAN DEBT TO BE HIS SEPARATE PROPERTY.

{¶7} Husband's first assignment of error argues that the trial court erred by determining that the portion of his student loans allocated to tuition and educational expenses was not marital debt. This Court agrees.

{¶8} R.C. 3105.171(B) provides that "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property." This is a fact-based determination that falls squarely within the province of the trial court, and this Court reviews that determination under a manifest weight standard. *See Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569, ¶ 23, citing *Morris v. Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 23. When the weight of the evidence is challenged in a civil case, this Court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *.'" (Alteration in original.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶9} "Marital property" is "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" R.C. 3105.171(A)(3)(a)(i). "Separate property," on the other hand, includes:

all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets; [or]

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

R.C. 3105.171(A)(6). R.C. 3105.171 does not specifically address debt, but this Court has concluded that the division of property must also include marital debt. *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8, citing *Hines v. Hines-Ramsier*, 9th Dist. Wayne No. 10CA0059, 2011-Ohio-6093, ¶ 5. "Marital debt" is "'debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.'" *Yousef*, 2021-Ohio-3322, at ¶ 6, quoting *Cross v. Cross*, 8th Dist. Cuyahoga No. 102627, 2015-Ohio-5255, ¶ 30, quoting *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001 CO 60, 2003-Ohio-2559, ¶ 47, citing Turner, *Equitable Distribution of Property*, Section 6.29, 455 (2d Ed.1994, Supp.2002). This Court has observed that "'[d]ebts incurred during the marriage are presumed to be marital unless it is proved they are separate.'" *Yousef* at ¶ 6, quoting *Mullen v. Mullen*, 9th Dist. Summit No. 28083, 2017-Ohio-77, ¶ 11, citing *Kehoe v. Kehoe*, 8th Dist. Cuyahoga No. 97357, 2012-Ohio-3357, ¶ 14, citing *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395, ¶ 12.

{¶10} "Student loans obtained by one spouse during the marriage may be categorized as marital debt subject to equal distribution." *Heavilin v. Fillman*, 5th Dist. Tuscarawas No. 2019 AP 04 0014, 2019-Ohio-5428, ¶ 20. When determining whether student loans were incurred "'for the joint benefit of the parties or for a valid marital purpose[,]'" *see Cross* at ¶ 30, quoting *Ketchum* at ¶ 47, courts consider factors such as whether the couple was in agreement about the decision for one spouse to obtain further education, whether the spouse enrolled in school worked during that time period, and whether the loans were used for family expenses. *See Heavilin* at ¶ 23. This characterization recognizes a fundamental principle regarding student loans in these circumstances:

> When a spouse pursues a higher education during the marriage, it represents a common goal of the parties to increase their economic standing. The marital partners expect to share in the rewards of such an education. For this reason, it is not uncommon that one spouse will assist the other in that goal through financial or emotional support or both. The supporting spouse may also assume more of the household duties so that the other may spend more time on studies. Student loans are often taken out not only to pay for school, but also to provide additional financial resources while the one spouse is pursuing an education. [*In re Marriage of Speirs*, 956 P.2d 622, 623-24 (Colo.App. 1997)]. For this reason, contributions made by one spouse to the other's education may be considered when dividing the marital estate or determining spousal support, just as the efforts of one spouse which result in an appreciation of the value of the other's property are relevant in dividing the marital estate.

*Webb v. Webb*, 12th Dist. Butler No. CA97-09-167, 1998 WL 820838, \*3 (Nov. 30, 1998). Thus, "[c]lassifying the student loans obtained during the marriage as marital liabilities recognizes the nature of the parties' expectations during the time the higher education is pursued as well as the respective roles of the parties in seeking the degree and supporting one another." *Id*. at \*4. As another court has noted, "[t]he fact that [the other spouse] never saw the economic fruition of [the enrolled spouse's] additional education does not serve to transform the nature of the debt from marital debt to separate debt." *Heavilin* at ¶ 23.

{¶11} Husband enrolled in medical school with Wife's full support after his attempts to become licensed in the United States by pursuing a residency directly failed. Wife's testimony demonstrates that she appreciated the interrelated financial issues presented by the family's situation: Husband's income without practicing medicine was limited, and the cost of repeatedly applying for residencies was prohibitive. Wife testified that she understood that medical school was expensive and appreciated that the cost of living in New York City was higher than in Ohio. Her testimony also demonstrates a thorough understanding of the family's financial position from which it can be inferred that she understood they could not pay those expenses without additional resources. Wife also testified that as a result of conversations with current medical residents in

her workplace, she understood the amount of debt that others had undertaken under similar circumstances. Although Wife ultimately expressed reservations regarding the cumulative amount of that debt, it is equally true that she supported and encouraged Husband in his endeavor, and she recognized that Husband's future stream of income would be of benefit to the family.

{¶12} With respect to the student loans attributable to tuition and educational expenses, therefore, it is apparent from the record that Husband's medical education represented "a common goal of the parties to increase their economic standing[]" and that Husband and Wife "expect[ed] to share in the rewards of such an education." *Webb* at *3. In classifying these loans as Husband's separate property—but classifying the loans attributable to his living expenses as marital property—the trial court disregarded the principle, articulated above, that furthering a spouse's education for the purpose of generating future income can represent "'a valid marital purpose[]'" that is undertaken "'for the joint benefit of the parties[.]'" *Cross* at ¶ 30, quoting *Ketchum* at ¶ 47. In so doing, the trial court discounted evidence to that effect as well. Simply put, there is no basis in the record for a distinction that justified the classification of student loans attributable to Husband's living expenses as marital property, but those attributable to earning the degree itself as separate property.

{¶13} Accordingly, this Court agrees that the trial court's determination that the student loans attributable to Husband's tuition and educational expenses were his separate property is against the manifest weight of the evidence. Husband's first assignment of error is, therefore, sustained.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT ERRED IN DETERMINING IT EQUITABLE TO ALLOCATE ALL OF HUSBAND'S STUDENT LOAN DEBT TO HUSBAND ALONE.

{¶14} In his second assignment of error, Husband argues that the trial court abused its discretion by allocating the student loan debt attributable to his living expenses solely to him. Husband also challenges the trial court's alternative conclusion that, even if the student loan debt attributable to tuition and educational expenses was marital debt, it should also be allocated to Husband.

{¶15} R.C. 3105.171(C)(1) requires trial courts to divide marital property equally, except to the extent that an equal division would be inequitable. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5. In that situation, a trial court may order an equitable division. *Id.* The trial court must bear in mind that "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property" and must consider "all relevant factors" related to the property division in determining what is equitable. R.C. 3105.171(C)(2). *See also Neville* at ¶ 11. *See generally* R.C. 3105.171(F)(1)-(10). Like marital assets, marital debts are subject to allocation as part of a property distribution. *Polacheck v. Polacheck*, 9th Dist. Summit Nos. 26551, 26552, 2013-Ohio-5788 ¶ 18. A trial court's decision regarding the division of marital debt is reviewed for an abuse of discretion. *Id.* at ¶ 7. An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶16} The division of marital debt is often guided by consideration of the factors set forth in R.C. 3105.171(F). *See Polacheck* at ¶ 18. As this Court has recognized, however, these factors "seem to anticipate that marital liabilities can and should be paid from the pool of marital assets." *Id.* at ¶ 22. Consequently, when unsecured debts such as student loans that are to be repaid from future income are part of the marital estate, courts also consider other factors—particularly those

which affect the spouses' relative abilities to pay the debt and the spouse who will ultimately obtain the benefit of increased income. *Id*. at ¶ 23, 26. When student loans are characterized as marital property, the trial court has "'the greatest power to enter an equitable division of the marital estate and [can] * * * consider all of the circumstances surrounding the parties' positions when the loans were first taken out and at the time of the divorce.'" *Heavilin*, 2019-Ohio-5428, at ¶ 20, quoting *Webb*, 1998 WL 820838, at *4.

{¶17} In *Polacheck*, this Court rejected "[t]he notion that the degree-earning spouse is the sole beneficiary of the earned degree, and hence should shoulder all of the student-loan debt" as "inherently flawed." *Id*. at ¶ 28. Noting that "it is inequitable to require the spouse earning a degree toward the end of the marriage to shoulder the entire burden of the debt simply because debt was incurred toward the end of the marriage[,]" this Court concluded that the equitable division of student loan debt should be done with consideration for "the parties' relative economic circumstances" and "any fact it expressly finds to be relevant and equitable." *Id*. at ¶ 30-32. *Accord Heavilin* at ¶ 21; *Shoenfelt v. Shoenfelt*, 3d Dist. Shelby No. 17-14-13, 2015-Ohio-225, ¶ 54-61. *See generally* R.C. 3105.171(F)(10). Relevant factors include "'when the income generated by the degree was realized; whether the spouse undertaking the degree was not working while obtaining the degree, thus depriving the family of additional income; and whether the student loans were used to pay for family expenses.'" *Heavilin* at ¶ 21, quoting *Shoenfelt* at ¶ 55.

{¶18} The trial court noted that Husband testified that some of the student loan proceeds were used to reduce the parties' mortgage indebtedness, but stated that Wife's testimony on that point contradicted Husband's. The record does not, however, bear out that distinction. Wife acknowledged that the proceeds from the student loans were deposited in the parties' joint bank account, and she agreed that they were not used to pay for "household expenses[.]" Her testimony

is silent regarding the use of the loan proceeds to pay down the principal amount owed on the marital residence, however. It was undisputed that the parties had a significant level of equity in the marital home despite its recent purchase after Husband started medical school, and Husband testified that the parties completed $30,000-$50,000 in renovations on the marital home "[s]o that student loan was helpful."

{¶19} The trial court also reasoned that some of the loan proceeds were used exclusively to fund Husband's living expenses in New York City while Wife supported the family living in Ohio. According to Wife's testimony, this was by agreement. She testified that she knew the cost of living in New York City was higher, but supported Husband's decision to live and attend school there. When pressed for suggestions regarding how Husband might have reduced his living expenses, Wife offered only that he could have shared housing, but chose not to do so. With respect to the student loans attributable to Husband's education expenses and tuition, Wife's testimony as a whole demonstrates that she appreciated the future benefits that would accrue to the family as a result of Husband's medical degree.

{¶20} The gravamen of the trial court's analysis appears to be the parties' testimony about their respective knowledge of the student loan process. In that respect, the trial court noted that the decision to borrow loans was solely Husband's and emphasized that Wife "was unfamiliar with the use of student loans because in Egypt, where she went to college, they do not use such loans." Although Wife did testify that student loans are not used in Egypt, her full testimony belies the conclusion that she was ignorant of the potential debt load that results from medical school. The testimony from both parties suggests that neither Husband nor Wife had a cumulative number in mind when Husband first applied for student loans, but both were aware of the magnitude of the loans at least as soon as the first disbursement. Wife, in particular, testified that she was aware

from discussions with coworkers that medical school was expensive and could result in a high burden of student loan debt.

{¶21} On the other hand, as the trial court observed, Wife testified that she expressed concern on several occasions regarding the mounting student loan debt, even at one point consulting a financial advisor. According to Wife's testimony, Husband was confident that his future income stream would be sufficient to make the loan payments, and it is apparent that Husband enrolled in medical school in New York City with Wife's full support. Indeed, Wife testified that the alternatives—continuing to pay annual expenses involved in applying for a residency and living within the financial constraints imposed by Husband's circumstances—were unfeasible given the family's financial position.

{¶22} In that respect, the parties testified that once Wife became licensed as a pharmacist in the United States, her earning capacity far outpaced Husband's. During his enrollment in medical school, Husband was a full-time student, and he testified that this arrangement was customary given the demands of medical school. Wife continued to work full-time as a pharmacist, and the parties stipulated that her income was $120,000 per year. There is no dispute that with the exception of car insurance, Wife paid for all of the household expenses for her and the three children while Husband attended medical school.

{¶23} Although Husband had not yet obtained a residency placement at the time of trial, counsel later informed the trial court that his salary over the three years of his residency would be $57,475, $58,400, and $61,350. Husband testified that he could pursue additional training after residency, which would result in another year at approximately the same level of income. Husband had not yet relocated to Ohio for his residency, so the record does not contain evidence regarding his future living expenses. Husband also testified that his future income could vary depending on

the subspeciality of cardiology that he pursued, but estimated that it would be $350,000 per year or more. Wife's estimate of Husband's future income was similar.

{¶24} Although this Court takes no position at this time regarding what allocation of the student loan debt is appropriate under these circumstances, two considerations that seem to be implicit in the trial court's reasoning are of concern in light of this Court's decision in *Polacheck*. First, as noted above, this Court rejected "[t]he notion that the degree-earning spouse is the sole beneficiary of the earned degree, and hence should shoulder all of the student-loan debt[.]" *Polacheck*, 2013-Ohio-5788, at ¶ 28. In addition, this Court emphasized in *Polacheck* that "marital fault" plays no role in the allocation of marital property. *Id.* at ¶ 36. Although the parties in this case may well have suffered from a near-total mismatch of expectations regarding finances—and the record speaks of a rising level of conflict in their relationship—there is no basis apparent from the record to attribute misconduct to either party in connection with the student loans. *See id.* at ¶ 28. *See generally* R.C. 3105.171(E)(4).

{¶25} Under these circumstances, this Court concludes that the trial court's determination that all of Husband's student loan debt should be allocated to Husband constituted an abuse of discretion. Husband's second assignment of error is, therefore, sustained.

**ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT ERRED IN FAILING TO GRANT HUSBAND SPOUSAL SUPPORT.

**ASSIGNMENT OF ERROR NO. 4**

THE TRIAL COURT ERRED IN ITS CHILD SUPPORT AWARD IN BOTH THE AMOUNT AND EFFECTIVE DATE.

**{¶26}** In his third and fourth assignments of error, Husband challenges the trial court's determinations regarding spousal support and child support. In light of this Court's resolution of his first and second assignments of error, his third and fourth assignments of error are premature. *See Yousef*, 2021-Ohio-3322, at ¶ 11, 13-14.

III.

**{¶27}** Husband's first and second assignments of error are sustained. His third and fourth assignments of error are premature. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

 

 

 

LYNNE S. CALLAHAN
FOR THE COURT

 

 

TEODOSIO, P. J.
CONCURS.

SUTTON, J.
DISSENTING.

{¶28} I respectfully dissent from the majority's opinion.

{¶29} At the February 19, 2019 trial, Wife testified she agreed Husband should go back to medical school to achieve his dream of once again practicing medicine as a cardiologist. However, this decision was not based upon financial circumstances. The record demonstrates Wife was not anticipating, or depending upon, a financial windfall after Husband completed medical school. Wife testified, with her salary as a Summa pharmacist of $120,000.00 per year, she was fully capable of paying the mortgage, utilities, childcare and living expenses for herself and the parties' three minor children.

{¶30} While Husband attended medical school, he was not employed and did not contribute financially to the family. Wife worked full-time and raised the children in Ohio, while Husband attended medical school in New York. Wife was not consulted regarding the student loans, nor did she consent to the amount of the loans. Wife did not sign any of the loan documents.

Instead, Wife learned of the amount of indebtedness after Husband secured the loans. Wife testified, "I was always informed after the fact." Both parties testified they did not discuss repayment of the loans. Wife further testified Husband stated: "I believe that I am going to make enough money to pay off this loan in the future." Additionally, Wife testified upon asking Husband to consider a less expensive housing option in New York, Husband replied, "[t]his is my money and don't tell me where to spend it."

{¶31} Based upon this record, and in accordance with R.C. 3105.171(B), I do not support the majority's conclusion that the trial court "clearly lost its way and created a manifest miscarriage of justice" in determining the 2015, 2016, and 2017 student loan debt, allocated for Husband's tuition and educational expenses, was separate debt. *See Eastley*, 2012-Ohio-2179, at ¶ 20; *see also Suppan*, 2018-Ohio-2569, at ¶ 23. This is a fact-based determination, laying squarely in the province of the trial court, and not an "exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal[.]" *Suppan* at ¶ 23.

{¶32} Further, based upon this record, I also do not support the majority's conclusion that, by allocating the student loan debt attributed to Husband's living expenses solely to Husband, the trial court abused its discretion. This is not a situation where the trial court's decision "is contrary to law, unreasonable, not supported by evidence, or grossly unsound." *Menke*, 2015-Ohio-2507, at ¶ 8.

{¶33} Accordingly, I would overrule Husband's first and second assignments of error, and resolve Husband's third and fourth assignments of error on the merits.

APPEARANCES:

CORINNE HOOVER SIX, Attorney at Law, for Appellant.

ADAM R. MORRIS, Attorney at Law, for Appellee.